WILSON, respondent, *v.* DAVIS et al., appellants.

PRACTICE—*findings of referee—not reviewed without testimony.* This court will not review the findings of a referee, if the testimony on which they are based is not made a part of the transcript.

PARTNERSHIP — *partner has lien on joint property.* A partner, who contributes on account of the partnership business any sum in excess of his proportion over his copartner, has a lien upon the joint property for the sum so contributed.

INTEREST — *compound interest — not allowed in equity.* Courts of equity will not allow compound interest, if the contract therefor and the original contract were made at the same time and before any interest was due, and a written agreement to pay such interest shall not be enforced.

INTEREST — *compound interest at common law.* The old common-law rule, which did not allow compound interest, has not been overruled in the United States.

INTEREST — *territorial statute regulates simple interest.* The statute of this Territory, which establishes the rates of interest, relates to simple interest, and. does not authorize contracts for compound interest.

INTEREST — *a contract for payment of compound interest not enforced.* A party who agrees to sell real and personal property upon the payment of a note, which stipulates that the interest shall be compounded monthly, if it is not paid, is required to convey the property on the payment of the principal of the note, and simple interest upon the same.

PARTNERSHIP — *rights of partners after dissolution — sale of property.* The member of a partnership, who dissolves it by refusing to continue its business, cannot compel his partner to carry out one article of the copartnership, which stipulates that the excess of funds which either contributes, shall be paid out of the net earnings of the partnership property; and a court of equity can order the property to be sold to pay such excess.

PLEADING — *attorney's fees not recoverable under general prayer.* A reasonable attorney's fee will not be awarded to a party under a general prayer for a certain sum as damages and expenses in protecting "rights, remedies and equities." It should be specifically demanded.

PRACTICE—*jurisdiction—this court examines nothing except decree of court below.* This court can only determine whether or not the decree of the court below should be affirmed, and cannot now consider the effect of the undertaking on appeal upon the order of the court below, for the sale of property.

*Appeal from the Third District, Lewis and Clarke County.*

THIS case was before this court at the December term, 1868, and is reported, *ante,* p. 98.

On November 4, 1868, Wilson filed an amended and supplemental complaint against Davis, W. L. Perkins and W.

A. Fredericks, which contained the following material allegations: That Davis and Fredericks, on January 30, 1867, owned the property in Gallatin county, Montana, known as the Madison mills; that Davis sold and delivered his interest therein, for two certain contracts, which were as follows:

"GALLATIN CITY, *January* 30, 1867.

"Twelve months from date, for value received, I promise to pay A. J. Davis, or order, five hundred and thirty-three and one-half ounces of bankable gold dust, or its value in treasury notes of the United States, together with five per cent interest from the first day of January, 1867, per month, said interest to be paid monthly, and if not paid at the end of each month, to bear interest the same as the principal. It is agreed that should ninety days' interest accumulate without being paid, then this note falls due.

"W. A. FREDERICKS."

[$4.50 stamp.]

"GALLATIN CITY, *January* 30, 1867.

"For value received, I promise to pay A. J. Davis, or order, seven hundred and thirty-nine sacks of 100 pounds each of No. 1, thribble X flour, manufactured at the Madison mills, in this place, payable as fast as the mill can make the same, the payment to be completed on or before the first day of June next, and if not paid at maturity, I agree to pay any damages that said Davis may sustain thereby.

"W. A. FREDERICKS."

[$3.25 stamp.]

The complaint further alleged that Davis was to make a good deed of one-half of the property to Fredericks, as soon as said contracts were executed; that Fredericks, afterward, executed to said Perkins a deed of trust of the entire property, to secure the payment to Davis of said gold dust and flour; that Fredericks, on February 1, 1867, sold to Wilson one-half of said property for $9,000, and the payment of one-half of the interest payable to Davis on said gold dust contract; that Wilson had had possession of the property from that date, until the appointment of a

receiver in this action; that Fredericks then agreed that Wilson should have the net earnings of the mill, until he was repaid all amounts advanced by him over what Fredericks advanced; that Wilson so advanced $3,000 more than Fredericks to run the mill, and $8,000 in gold dust, flour and money for Fredericks to Davis, besides said $9,000, for all of which he was entitled to a lien on Fredericks' half of the property; that Davis had received on said contracts $25,000, which fully satisfied them; that Davis knew that Wilson had an interest in the property, and refused to receive from Wilson, on May 20, 1867, the sum due from Fredericks to Davis, which Wilson then tendered; that Davis and Fredericks conspired together to prevent Wilson from obtaining a deed to his half of the property; that Wilson was ready to pay any sum that was due from Fredericks to Davis; that Davis had revoked a power of attorney to Perkins, to execute a deed to Fredericks, and that Fredericks had executed to Davis a deed of his interest in the property; and that Davis had a deed to the property from the sheriff of Gallatin county, and that said deeds were fraudulent.

The complaint prayed for an accounting between Wilson and Davis, and that Davis and Fredericks be compelled to execute a deed of one-half of the property to Wilson; that an accounting be had between Wilson and Fredericks, and that Wilson have a lien on Fredericks' half of the property for the amount found due to him; that the trust deed to Perkins, the deed from Fredericks to Davis, and the sheriff's deed to Davis, be adjudged null and void; and that Wilson have quiet possession of his half of the property.

On March 8, 1869, Davis and Perkins filed their answer to this complaint, and admitted the following facts: That on January 30, 1867, Davis and Fredericks owned the property, and that Fredericks made the two contracts for flour and gold dust; that Fredericks made the trust deed to Perkins; that Davis agreed to make a deed of his half of the property when the flour and gold dust were delivered; that Davis also agreed that Fredericks, on giving thirty

days' notice, could satisfy the contracts before maturity; and that Davis had executed to Perkins a power of attorney to make a deed of the property to Fredericks, on payment of the contracts.

The answer denied that Davis ever sold or delivered the property to Fredericks; that the contracts for flour and gold dust had ever been satisfied; that Wilson became the joint owner of the property with Fredericks; that the agreement of Wilson and Fredericks affected the interests of Davis in the property; that Wilson ever tendered the sum due from Fredericks to Davis; that Davis and Fredericks ever conspired together to wrong Wilson; and that Wilson and Fredericks ever had possession of the property.

The answer alleged that Perkins entered into the possession of the property under the trust deed from Davis; that on December 3, 1867, Davis recovered a judgment against Fredericks, upon his confession in writing, on the flour contract, for $7,368, and also a judgment on the gold dust contract for $16,502; that executions were issued on said judgments, under which the sheriff of Gallatin county sold the property, and delivered to Davis a deed thereof, on July 1, 1868; that Wilson had full knowledge of the rights of Davis before he contracted with Fredericks for an interest in the property; that Fredericks owed Davis $17,382, besides $6,500 damages; and that Wilson had wrongful possession of the property, and had appropriated the proceeds, $14,700, and personal property valued at $5,000.

The answer prayed that the property be restored to defendants.

On April 15, 1869, Fredericks filed his separate answer, which was substantially the same as that of Davis and Perkins, and alleged that Wilson agreed to pay him for one-half of the property $9,000, and one-half of the debt, as well as interest, due from Fredericks to Davis; and that, by mistake, the agreement relating to the payment of one-half of said debt was omitted in the writings.

On March 25, 1869, the court, by agreement of the parties, appointed Cornelius Hedges, Esq., a referee, to make an

accounting between Wilson and Fredericks. On June 29, 1869, the court, by agreement of the parties, appointed Henry N. Blake a referee, to report the amount and value of the flour received by Davis from Fredericks or Wilson, or both, on the flour contract; and the sum that would be a reasonable attorney's fee in this cause, for foreclosing and collecting the sum due on the trust deed of Davis.

On March 26, 1869, the parties agreed, in open court, that all questions of fact should be decided by the court.

On April 27, 1869, Hedges, referee, reported that Wilson had paid Fredericks $9,000 as purchase-money for one-half of the Madison mills; and that Fredericks owed Wilson $14,858.16, for the payment of which Wilson was entitled to receive the net earnings of the property. The court, WARREN, J., confirmed this report.

On July 5, 1869, Blake, referee, reported that Davis had received on the flour contract, over the amount credited thereon (125 sacks), 650 sacks of XXX flour, worth $6,460; and that a reasonable attorney's fee for collecting the amount due Davis on the trust deed was $1,500. The court, WARREN, J., confirmed this report.

On July 29, 1869, the court, WARREN, J., rendered judgment, and signed a decree in favor of Wilson, and defendants appealed.

The opinion contains the other facts.

WOOLFOLK & TOOLE, for appellants.

The court failed to find on material issues in the pleadings. Wilson asks no relief from the contract he has set out, but demands a specific performance from Davis. The alleged tender by Wilson to Davis was not made after giving thirty days' notice, according to the agreement between Davis and Fredericks, and was void.

The court does not find that there was collusion between Davis and Fredericks to defraud Wilson. A fraudulent settlement between Davis and Fredericks as to Wilson is not sufficient proof of fraud. The settlement must have been with intent to defraud Wilson.

Material allegations of the complaint, which are denied by the answer and not found by the court, are equivalent to a finding for the defendant. Wilson cannot be subrogated to the rights and equities of Davis. Davis cannot be compelled to give up a good contract to one who acquires an interest in the property with a full knowledge of all the facts. Davis can let his demand run until barred by the statute of limitations.

Davis does not seek to foreclose, and asks no affirmative relief. There could be no accounting between Wilson and Davis on account of contracts between Davis and Fredericks, in which there was no privity between Wilson and Davis.

The decree of the court relieves Wilson in the absence of any prayer for relief, and in the face of his prayer for a specific performance of the contract, and against the plain terms of the contract.

The advances made by Wilson to Davis and otherwise, by express agreement, were to become a lien on the property, and were not payable until they were made from the earnings of the mill. Wilson could acquire no rights in the property that were not subject to those of Davis.

The court erred in not allowing Davis interest upon interest, according to the contract, which Wilson brings this suit to compel Davis to perform. This amounts to $6,424. Wilson cannot pray for relief from one part of an agreement and demand a specific performance of the other part. The court cannot compel a party to sell property for a consideration against his will. A third party can make no such plea after purchasing with a knowledge of the contract. Specific performance on one side requires it on the other.

Wilson must receive what Fredericks owes him from the net earnings of the mill and in no other way. He made this contract and must stand upon it. There is no finding that the net earnings of the property would not liquidate Wilson's demand.

The court erred in ordering a sale of the property and the payment of the proceeds to Wilson. This works an

injustice to Fredericks, who loses his property, the net earnings of which should pay his debt to Wilson. It is an unauthorized violation of the spirit and terms of the.contract. Wilson could not have the interest of Fredericks sold to satisfy a partnership debt in this way, for each partner has an interest in the proceeds. Civil Prac. Act, § 264, *et seq.*

The appeal in this case stayed the sale of the property. It was in the custody of the law. Wilson, purchasing with full knowledge of the facts, cannot obtain relief from a contract as usurious, as he does not plead the same. *Ohio & M. R. R. Co.* v. *Kasson,* 37 N. Y. 218 ; *Connecticut* v. *Jackson,* 1 Johns. Ch. 14; *Kellogg* v. *Hickock,* 1 Wend. 521 ; *Sands* v. *Church,* 2 Seld. 347; *De Wolf* v. *Johnson,* 10 Wheat. 392 ; *Merrills* v. *Low,* 9 Cow. 65 ; *Beach* v. *Fulton Bank,* 3 Wend. 573 ; *Green* v. *Covilland,* 10 Cal. 317.

The court should have allowed Davis an attorney's fee. The referee reported the amount.

Respondent cannot show a case where the plaintiff, in an action to compel the specific performance of a contract to convey real estate, is relieved for any cause from part of the purchase-money and yet obtained a decree of title. Courts of equity do not make a contract for parties and enforce it against their will.

No insolvency is charged against Fredericks, and there is no necessity for interfering between Davis and Fredericks. It is not charged that Wilson is not amply secured, and the contracts cannot be carried out according to the intention of the parties.

W. F. SANDERS, WORD & SPRATT and G. MAY, for respondent.

No brief on file.

KNOWLES, J. Although exceptions were taken to the findings of the reports of the referees in this case, the testimony upon which they based their findings is not made a part of the record in this court. Hence we cannot review them ; and they must stand as true. No exceptions appear

in the record to the findings of fact by the court below. These also then must stand as true. There are no specifications in the record of errors committed in rendering the decree by the court below. This, however, was not objected to by counsel for respondent; and waiving this objection the only points we can consider are those which appellants have presented in their brief, and which appear on the face of the records.

It appears from the findings of the court below, and the referees in this cause, that Davis contracted to sell Fredericks an undivided one-half of the Madison mills, together with the land upon which the same was situated, and all the appurtenances thereto attached, together with some personal property. That to secure the contract price for said property Fredericks executed and delivered to Davis his two promissory notes, one for flour and the other for gold dust, and to secure the payment of these executed and delivered to Perkins his deed of trust for the benefit of Davis on the said mill property.

Subsequent to this Fredericks contracted to sell, and did sell to Wilson an undivided one-half of said property; and in pursuance with said contract Wilson and Fredericks entered into the joint possession of said property.

Fredericks after this sale to Wilson confessed two judgments on the aforesaid promissory notes, in Meagher county, in favor of Davis. The court below set these two judgments aside as a fraud upon the rights of Wilson.

All title that Davis may have acquired to said property by virtue of a sale thereof under these judgments failed in consequence of the annulling the said judgments. The deed from Fredericks and wife to Davis the court also declared fraudulent and void. Appellants make no point upon these rulings in their brief. And if they did, there cannot be any doubt from the report of the referee, Blake, that sufficient does appear to have fully warranted the court in so setting the smaller of said judgments aside for that cause, and that defendant, Davis, was not in the least damaged by the setting aside of the other, as this court has held

that judgments bear only ten per cent interest; and as any rights Davis acquired to said property by a sale thereunder was in subordination to Wilson's rights. Davis knew of Fredericks' sale to Wilson; and hence as to his rights, the sale by Fredericks to him (Davis) was a fraud. It was an attempt by Fredericks to convey what he had parted with. All that is left for this court to consider then, is the rights of the several parties to this action under the contract of sale from Davis to Fredericks, the deed of trust to Perkins, and the contract of sale by Fredericks to Wilson. Considerable is said in the brief of appellants in regard to the right of Wilson to be subrogated to the rights of Davis.

The decree entered by the court below does not purport to do this. It allows Wilson to pay off the incumbrance against the joint property of Fredericks and Wilson. This is no novel right, but one which the law clearly guarantees. It also decrees that the amount paid by Wilson in excess of that paid by Fredericks shall be a lien upon their joint property. It would appear from the contract between Fredericks and Wilson, which is a part of this record, that these parties had been clearly partners, and that this property was partnership property. The law gives to each partner a lien upon the joint effects of the partnership for any excess over his partner which he has contributed to their joint business, and to preserve their joint property. It decreed that upon the payment to Davis of the amount for which he contracted to sell said property to Fredericks, together with five per cent interest per month thereon, without any interest upon interest, Davis should make a conveyance to Fredericks. Wilson having by law a lien upon whatever interest Fredericks had in said property, could properly demand of Davis a conveyance to Fredericks of an undivided one-half of said property, upon his receiving what he was legally entitled to under the contract to sell the same.

This brings us to the consideration of the question of how much Davis was entitled to receive of Fredericks, or his grantee, before he could be compelled to make a deed to said property. The note given by Fredericks, payable in

gold dust or its equivalent in United States treasury notes, to secure the payment of part of the purchase-money for said property, stipulated that the principal should bear five per cent interest per month, payable monthly ; and that, if this interest should not be paid when it fell due, then this interest should bear the same rate of interest as the principal. The court below refused to allow this interest upon interest. This is assigned as error in appellant's brief.

It seems to be a well-settled principle, in courts of equity, not to allow interest upon interest where the contract to pay the same was made at the time of the original contract, and before any interest had become due, where the payee seeks to enforce such a contract, although a stipulation to that effect would not vitiate the original contract. *Selleck* v. *French*, Am. Lead. Cases, 534.

If Davis, then, would not be entitled to demand of Fredericks interest upon interest, if he sought to collect the same and to enforce his lien upon said property, there is no reason for requiring Fredericks or Wilson to pay him more than he could recover, before they could demand of Davis a cancellation of the deed of trust at least.

It is claimed, however, that it would be inequitable to compel Davis to convey his property for less than he had agreed to. That a court of equity *might* think it inequitable to compel Fredericks to pay compound interest, if Davis *sought* to collect the same, and, upon application, might relieve Fredericks of this contract as oppressive and unconscionable, but that they cannot say to Fredericks you need not pay what you agreed to, and, to Davis, you must convey your property for less than you agreed.

In law, what did Fredericks agree to pay Davis for this property, and what did Davis agree to convey it for?

Interest upon interest was not allowed at common law, although awarded by a special contract to that effect. Pars. on Bills & Notes, vol. 2, p. 391; *Rensselaer Glass Factory* v. *Reid et al.*, 5 Cow. 609.

It was considered a violation of the laws of God, and contrary to good conscience ; although an English statute

was enacted, prohibiting all interest above a certain amount. This left it to parties to agree to any interest less than that amount.

It was thought better, perhaps, that a small interest should be collected legally, than that a large interest should be collected illegally and by evasive means. This statute, however, was never construed by the English courts as allowing compound interest in any amount. The current of English authorities are adverse to allowing compound interest. The only modification which this English statute of Henry the VIII, before referred to, made then in the common law, was to allow simple interest, when agreed to by the parties, for any amount, not to exceed ten per centum per annum. Thus stood the common law, I think, when this government became independent. The legislative assembly of this Territory have enacted, "That the common law of England, so far as the same is applicable and of a general nature, and not in conflict with special enactments of this Territory, shall be the law and the rule of decision, and shall be considered as of full force, until repealed by legislative authority." See Laws of Montana Territory for 1864, p. 356.

This rule of the common law is certainly applicable, and of a general nature. If we turn to the American rule, in relation to this question, I think we must arrive at the same conclusion. In this country the right to collect interest has been made legal by usage and the decisions of the courts. Pars. on Bills & Notes, vol. 2, p. 392. And I may add, in some States by statute. Only such interest should be allowed, then, as is warranted by usage and legal adjudications, or by statute. I think I am safe in saying, that no universal custom exists throughout the United States to allow compound interest. Many of the States have enacted special statutes, prohibiting it. Hare and Wallace, in their notes to the case of *Selleck* v. *French*, Am. Lead. Cases, 533, say, that the better opinion is, that at law compound interest should be allowed.

Parsons on Bills & Notes, vol. 2, p. 424, says, that, in the

VOL. I — 25.

present state of the authorities, it can hardly be supposed that a bargain for compound interest would be enforced.

In the case of *Cox* v. *Smith et al.*, 1 Nev. 169, the court says that it could find but two cases where courts of law had allowed compound interest, and one of these was afterward overruled. That in New York and Massachusetts the current of authorities are all against it.

It will be seen by these authorities that there is a conflict of opinion upon this subject in the United States. Whichever way the preponderance of authority may be, the means afforded me for the investigation of the subject will not warrant me in saying. I am sure, however, that the current of American authorities have not been so general as to warrant any one in saying that the old common-law rule has been set aside, and an American common law established upon this subject. It is conceded, everywhere, that the rule in equity courts is adverse to the allowing of such interest.

This is an action in equity. Whatever may have been the reasons that induced equity courts to refuse to allow compound interest, they have declared that such interest is illegal; or, in other words, courts of equity have held fast to the common-law rule upon this subject, and in nowise have changed it; and we must hold that such is the law, unless it has been changed by the statutes of this Territory.

The third section of the act upon interest, in this Territory, reads as follows: "The parties to any bond, bill, promissory note or other instrument of writing, may stipulate therein for a greater or higher rate of interest than ten per cent per annum, and any such stipulation contained in any such instrument of writing may be enforced in any court of law or equity of competent jurisdiction in this Territory."

This evidently contemplates simple interest. If the statute had said, parties to written instruments should not stipulate for any higher or greater rate of interest than ten per cent per annum, the same question as to compound interest would be left open. Compound interest is interest upon interest. The rate of interest which the law may allow

does not affect this question. In the case of *The Rensselaer Glass Factory* v. *Reid*, 5 Cow. 609, Senator Spencer says: "That in New York the statute on interest is negative, prohibitory of interest being taken above a certain rate." It does not, in terms, prohibit compound interest; yet, both the courts of law and equity have held, in that State, that, though this statute authorized parties to agree to any rate less than that prohibited, it did not authorize agreements on compound interest.

The case of *Cox* v. *Smith et al.*, 1 Nev. 169, holds that a statute of Nevada, similar to this one, does not warrant compound interest.

And, as before remarked, the statutes of England are only prohibitory of certain interest above a certain rate, and left it to parties to agree to a less rate of interest, and, in terms, did not prohibit compound interest; yet, the current of English authorities is adverse to allowing any thing but simple interest, when, as in this case, the contract was made at the time of the original contract. The term, rate per cent, whether used at common law or in statutes, so far as I have been able to learn, signifies so much per cent on the principal. That term, used in this statute, must be so construed.

It is then determined that compound interest is not warranted by law. Parties who make contracts are presumed to know the law, and that they make their contracts in direct reference to it. Davis and Fredericks it must be considered, then, knew the law did not allow compound interest, and that the agreement made therefor was not warranted by law, and would not be enforced.

Davis, then, in contemplation of law, did not contract to sell his one-half of said property for any more than the amount specified in said notes, together with simple interest on the gold dust note. There was nothing then inequitable in compelling him to convey this property for the full amount of said notes, together with simple interest on the gold dust note, as per agreement therefor. I do not think it was necessary for Wilson to set forth that this transaction was tainted with compound interest, and ask relief there-

from in this action. The same principle is not involved as in usury. For the taking of usury, the statute generally appends some penalty. The statute which creates this penalty must be set up before the penalty can be exacted. Here, however, the question was presented to the court: How much was Davis legally entitled to recover?

It appeared upon the face of the note that it contained a contract for compound interest.

It certainly could not have been necessary for plaintiff to point out this fact to the court. It certainly could not be presumed that a court could not observe this fact without it was specifically pointed out to it by an allegation in the pleadings. It is a well-known rule in pleadings that a party may allege facts which show that he is not entitled to recover. Had Davis been paid all that he was entitled to, and had he brought a suit for the compound interest agreed to be paid, and the complaint expressed this, it would not have been necessary for Fredericks to have filed an answer, setting up that it was compound interest.

A general demurrer to the complaint would have raised the issue, whether he was legally entitled to recover it, setting forth that the complaint did not state facts sufficient to constitute a cause of action. The defect would be one of such a nature, that even a failure to demur would not waive it. It could be raised at any time, for it would show upon its face that there was no legal consideration to support the agreement to pay it.

In this case, the part of the contract which stipulates for compound interest is capable of being separated from the rest of the contract, and as to this the court was warranted in saying there was no legal consideration to support it. There is one thing to be noticed in this action. Davis does not ask to be relieved from the contract to convey, if he cannot receive compound interest, but stands upon his contract, and asks for the complete fulfillment of it before he conveys. The case might present a different phase, if Davis should have asked to be relieved of the contract, and had tendered what he had received thereon. There is nothing

in the point that Davis did not receive proper notice of Wilson's intention to pay off said notes. Long before the pleadings were filed, upon which the case was finally tried, the record shows that these notes had become due. The notice required by the contract, between Davis and Fredericks, was to be given before the notes became due. Appellants complain because Perkins was not allowed to retain possession of the property. This might have been a joint cause of complaint, on the part of both Davis and Perkins, before the final adjudication in this matter, and the decree of the court, giving Davis all his legal rights. When the court had provided for the payment of the debt to Davis, and the cancellation of the deed of trust, it could not provide any thing in relation to the restoration of the possession of said property by Perkins, in accordance with the terms of said deed of trust.

The decree of the court, ordering the sale of the property in controversy, before Davis was paid the full amount the court found due against him, was perhaps a little irregular as to Davis, yet, the irregularity is not one that should occasion a reversal of the decree.

The decree in no instance orders Davis to convey the interest held in his name until he received the full amount due him, and the sale of the property could in no manner affect his rights.

It made no difference with Davis from what legal source he was paid the amount due him. The court might have reasonably inferred that the small amount it had found due Davis would surely be paid out of the sale of this property, upon which he had the deed of trust, and that it was not necessary that the cause should remain longer in litigation. As it treated the answer of Davis as a cross bill, the sale of the undivided one-half of said property for that purpose was certainly proper. As between Fredericks and Wilson it was proper that this property should be sold. The appellants complain that by the articles of partnership between Fredericks and Wilson, the excess of funds either contributed to the firm was to be paid by the company out of the net earnings of the mill. From the find-

ings of the court it would appear that, in pursuance of the articles of copartnership, Fredericks and Wilson conducted, for some time at least, the business for which the partnership was formed. There was no issue presented in the pleadings that required the court to find whether or when this partnership had been terminated, if at all. It would seem that the plaintiff in his pleadings regards the partnership terminated, and Fredericks alleges in his answer that it was never formed.

Taking the findings of the referee, Hedges, and those of the court, in connection with the articles of copartnership, which are a part of the record made so by Fredericks, there cannot be much doubt but that for a time the partnership did exist. The court may, however, have properly considered that the partnership had been terminated before the commencement of this action.

There was no time specified for the duration of the partnership. Either party could terminate it by giving proper notice, or the termination might be inferred from the conduct of the parties. Story on Part. 272.

There was enough in the conduct of Fredericks to justify the court in taking the view that the partnership had been dissolved. When the partnership was dissolved the stipulation above referred to was annulled. Fredericks, while refusing longer to continue the partnership, cannot demand of Wilson to carry out the stipulations of the articles which made the copartnership. When the partnership was dissolved no company, in accordance with this stipulation, was left to pay Wilson for his advances out of the net earnings of the said mill. As far as Fredericks and Wilson are concerned, the court undoubtedly treated this as an action to wind up the affairs of the partnership which had already been dissolved, and to give each his due rights in the partnership assets. This could be done only by a sale of the property belonging to the firm, which is the usual practice of courts of equity in such cases.

Appellants also claim that Davis should have been allowed a reasonable attorney's fee in collecting what the court

found due him. The only allegation in defendant Davis' answer, or cross-bill, which would warrant the court in awarding the same, is the one after he had alleged the amount due him on the notes for the sale of said property, which is as follows: "Besides the sum of six thousand five hundred dollars damages, and expenses incurred in attending to and protecting the rights, remedies and equities of said Davis in and about the premises which said Fredericks stipulated and agreed to pay and refund to said Davis, before said Davis was required to make a deed to said property."

In the first place this allegation is not specific enough to warrant the court in awarding any damages or any remuneration for expenses. It would be necessary for the answer to show wherein Davis had been damaged, and also what expenses and costs he had incurred in protecting his rights. It is not enough for a man to say he has incurred costs and expenses in protecting rights. What the law requires of a party is to show for what he had incurred these expenses and costs. The terms "rights," "remedies" and "equities" have no such determined meaning in a pleading as goods, wares, merchandise and chattels.

In the next place the replication to this answer does purport to put in issue this allegation, and although the denial may be said to be defective, perhaps, no objection was taken to it, however. Hence, if the court failed to find upon this issue, it will be supposed that Davis failed to establish it.

This court cannot now consider whether or not the order of sale of the court was stayed by the bond filed. What this court is required here to determine is, whether or not the decree of the court below should be affirmed.

Decree of the court below is affirmed.

*Exceptions overruled.*