IN THE

# APPELLATE COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY AND NOVEMBER TERMS, 1898, IN THE
EIGHTY-SECOND AND EIGHTY-THIRD YEARS OF THE STATE.

---

THE PENNVILLE NATURAL GAS AND OIL COMPANY *v.*
THOMAS ET AL.

[No. 2,355. Filed October 4, 1898.]

PARTNERSHIP.—*Sale of Property Effects Dissolution.—Enforcement of
Contract After Dissolution.—Natural Gas.*—A co-partnership was
formed for the purpose of drilling a gas well and supplying the
members thereof with natural gas. The co-partnership, at the re-
quest of defendant, disposed of its gas well to a third party, and
defendant agreed to furnish gas to the members thereof at a cer-
tain schedule of prices. *Held,* that the sale of the property of the
co-partnership effected the dissolution thereof and that the indi-
vidual members have not such a community of interest as to entitle
them to sue jointly or as partners for the breach of such contract.

From the Jay Circuit Court. *Reversed.*

*La Follette & Adair, J. H. Sell, David T. Taylor*
and *R. H. Hartford,* for appellant.

*W. H. Williamson,* for appellees.

WILEY, J.—This was an action brought by the ap-
pellees against the appellant and others. The com-
plaint was in two paragraphs. In the first paragraph

it was averred: That appellant was a corporation organized and existing under the laws of Indiana, and that its business was mining for gas and oil; that it had drilled, and then owned, several gas wells in and near Camden, Jay county; that its principal office and place of business was at Camden; that said wells produced sufficient gas to supply all of its customers, and still produces such supply; that it laid pipe lines and mains in the streets and alleys of said town, and connected same with its wells, and commenced to furnish the people and residents of said town with natural gas for machinery, heating and lighting purposes, and is still engaged in said business; that in February, 1888, the plaintiffs and all of the defendants, except the defendant (appellant) company, formed a partnership for the purpose of raising money with which to drill, pack and anchor a gas well in said town; that it was agreed that each member of said partnership should pay $10, and thereby be entitled to share in said partnership, and that the gas in said well should be furnished to the members thereof at $10 for a dwelling house per year, to be furnished free to churches and for street lighting, and each shareholder agreed to use the gas from said well to the exclusion of all others; that such subscriptions should be paid when the work on the well was begun, and that, after gas had been furnished for a year, each shareholder was to transfer his or her share to any person or company who would pipe said town, provided such company should not charge in excess of above rates; and that gas should be furnished to business rooms in said town in the same ratio as for dwellings; that said co-partnership adopted the name of the Citizens' Natural Gas Company of Jay county, Indiana; that in March, 1888, said company commenced a well, and completed the same April 2nd fol-

lowing, and obtained a plentiful supply of gas, and said well was named "Pauper Well;" that in July, 1888, said co-partnership sold said well, at the request of appellant, to the Portland Natural Gas and Oil Company; that thereupon appellant agreed to furnish each of the members of said co-partnership, their heirs and assigns, natural gas for heating and lighting at and for the following prices, to wit: For one share of said stock in said co-partnership a member thereof was to have in his dwelling house three stoves and three lights, for $10 per year; in each business house one stove and six lights, for $10 per year; in each office one stove and one light, for $5 per year; that appellant agreed to furnish the same at said schedule prices for fifty years, provided gas should continue to flow in paying quantities for that time; that it was also agreed that members of said co-partnership were to pay appellant for gas quarterly in advance after the first year; that appellant also agreed to furnish free gas for a flouring mill, free gas for lighting streets, and free gas for all the churches in the said town. This paragraph then sets out the names of the shareholders, and the number of shares they each owned. It is then averred that all the defendants below, naming them, except appellant, were members of said co-partnership, and made defendants, because they refused to join as plaintiffs. It is further alleged that appellant furnished gas under said contract and schedule of prices until January 1, 1895, at which time it gave notice to each of said members that after February 11, 1895, it would not furnish any more gas for lights and fuel according to the terms of said contract; that since said time it has failed and refused to comply with the terms of said contract; that each member of said co-partnership has performed all the stipulations on his and her part to be performed. It is further

alleged that natural gas continues to flow in paying quantities, and that appellant has sufficient gas to furnish each member of said firm the gas to which they are entitled under said contract, etc.

The second paragraph is substantially like the first, and differs from it only in minor details. In the second paragraph are averred with greater particularity the purposes for which appellees formed said co-partnership,—that the object thereof was to bore for or otherwise procure a gas well, and to put in a plant to supply themselves and others with gas; that for the purpose of indicating the interest of the several partners in the funds, property and rights of the co-partnership, it was agreed that for each $10 paid by a member into the capital a certificate should be issued entitling him or her to certain quantities of gas; that the houses and places of business of each of such members have been, and still are, accessible to the mains of appellant, and that they are each entitled to receive gas as provided by said contract; that they are willing to provide, and will provide, the necessary pipes and fittings to carry the gas from the curbstone to their several places of business and houses. This paragraph concludes with the averment that the appellees and all the defendants below, except appellant, are all the persons entitled to the benefits of said contract.

The appellant addressed a demurrer to each paragraph of the complaint. The reasons assigned for the demurrer were: (1) Neither the complaint nor any paragraph thereof stated facts sufficient to constitute a cause of action; and (2) that there was an improper joinder of parties plaintiff. This demurrer was overruled, to which ruling appellant excepted. The case was put at issue by the general denial, trial by jury

resulting in a verdict and judgment for $1,750. Appellant's motion for a new trial was overruled.

There are six specifications in the assignment of errors, but we shall notice only the first two, which are: "(1) The court erred in overruling the demurrer to the first paragraph of the complaint; (2) the court erred in overruling the demurrer to the second paragraph of the complaint." It is apparent that appellees proceeded upon the theory that they and the defendants below, other than appellant, were co-partners, and that the contract made by them with appellant inured to them jointly as such co-partners. If this theory is maintainable, then the complaint must be held good, for it avers a breach of the contract by appellant, and the performance of all its stipulations on the part of appellees. This would give them a right of action, if indeed they can jointly prosecute that right. If, however, appellees' liability for a breach of the contract created a right of action by each individual member of the co-partnership, and not to them as co-partners, then the action was improperly brought, and it was error to overrule the demurrer. It seems to us that the questions as to the sufficiency of the complaint must be arrived at by first determining whether or not the facts alleged therein show that at the time the action was commenced, the appellees were in fact partners in the legal sense of that term.

It is averred in the complaint that the purpose of forming said partnership was to drill a gas well to supply themselves and others with natural gas, and the rights of the individual partners therein fully described, and the conditions upon which they were to receive gas, were fully set forth. It is then shown by the averments that seven years before the bringing of the action, they sold said gas well which they

had bored or drilled, and, while there is no direct averment of the fact, it abundantly appears that they wholly abandoned the purpose for which the partnership was formed by the sale of such well. The sole business of said co-partnership was to furnish its individual members and others with gas. Its sole property, so far as the averments of the complaint show, was a gas well. It did not lay or own mains or pipe lines, and did not possess a franchise of any character. "A sale of all the property of a partnership, the management or operation of, or the dealing in, or with reference to which constituted its sole business, effects its dissolution, as also its total destruction." *Wells* v. *Ellis*, 68 Cal. 243, 9 Pac. 80; *Blaker* v. *Sands*, 29 Kan. 551; *Whitton* v. *Smith*, Fr. Miss. Ch. 231; *Wilson* v. *Davis*, 1 Mont. 183; *Kennedy* v. *Porter*, 109 N. Y. 526, 17 N. E. 426; *Thompson* v. *Bowman*, 6 Wall. (U. S.) 316; *Theriot* v. *Michel*, 28 La. Ann. 107; *Claiborne* v. *Creditors*, 18 La. 501. In Illinois it was held that the mortgaging of the entire property by one of the partners, where the mortgagee took possession, effected a dissolution of the partnership. *Smith* v. *Vanderburg*, 46 Ill. 34.

Keeping in view that a "partnership is a legal entity, formed by the association of two or more persons for the purpose of carrying on business together, and dividing its profits between them," it seems clear, in the light of the fact that appellees had sold all the property of the partnership, and abandoned its purpose, the partnership no longer existed. The contract set out in the complaint was not made for the benefit of the Citizens' Natural Gas Company, etc., the co-partnership, but for the use and benefit of the individual members thereof. When the contract was made it did not inure to the benefit of the partnership. Nothing depended upon the partnership to carry out the provisions of the contract. The partnership,

as such, assumed no liability. The partnership was under no obligations to do anything, so that the individual members might reap the benefits of the contract, but it was left with each of them to put themselves in touch with appellant, so as to receive the benefits of the contract, by piping his house, etc., so as to receive from it natural gas. Suppose, for an example, that after this contract had been made one of the appellees had refused and failed to pay appellant for the gas which he was entitled to use under the contract, would it be contended that appellant would have had a right of action against the partnership for such default in payment? Certainly not. How, then, can the alleged partnership have a right of action against appellant for an alleged breach of its contract with the individual members of the partnership? It seems to us that this is the real test, and decisive of the question. As we have seen, no legal right accrued to the partnership by the contract, and the complaint, in such case, would not be good for even nominal damages. If the contract was made for the benefit of the individual members, and not for the partnership, then the appellees must sue individually, and not jointly.

The allegations of the complaint do not show that as between the plaintiffs (appellees here) there was a privity of interest between them in the subject-matter of the action; but on the contrary, it clearly appears that their interests are several. The co-partnership—if, indeed, any ever existed—had been dissolved by the action of its members by disposing of the joint property and going out of business, and which left absolutely nothing upon which the partnership could rest. As to these appellees, it seems clear to us that in their separate and individual capacity they would, under the facts stated, have a right

of action against appellant company for a breach of contract, but they have not a community of interest that would entitle them to sue jointly or as partners. Under the averments of the complaint some of the appellees were entitled to have three fires and three lights, others two fires and two lights, and others one fire and one light. Hence for a breach of the contract they would be entitled to recover unequal damages. In other words, they would each have a right to relief, but the measure of damages would not be the same. The evidence in support of the damages accruing to the one who was to have three fires and three lights would not support a judgment in favor of the one who was entitled to have one fire and one light. Under the averments of the complaint, one of these appellees could not complain because one of his co-appellees had been refused the use of gas under the terms of the contract. The former could not complain because of a breach of the contract as to the latter. The contract by its express terms did not inure to appellees collectively or as partners, but to them separately and as individuals. To entitle two or more persons to join as plaintiffs, it is not sufficient that they each have a cause of action arising out of the same transaction or matter. The plaintiffs must have a common interest in the subject of the action and in the relief. Each must be interested in the relief sought by the other. *Martin* v. *Davis,* 82 Ind. 38; *Heagy* v. *Block,* 90 Ind. 534. The question we are now discussing may be simplified by an illustration. Suppose A, B, C, D and E are the joint owners of personal property, and that their interests are ascertained and agreed upon. They dispose of such property by sale to F on credit, and F agrees to pay to each of them the amount represented by their respective interests. Such sale and agreement would create

an individual liability against F, in default of which they would each have an individual right of action against him. There would be no community of interest between the vendors, and they would have no joint right of action against the vendee for his failure to keep his promise or agreement to pay them their respective interests under his contract. And that is this case exactly. Here it is averred that appellant company agreed to furnish appellees with gas for fuel and lighting purposes. Appellant was to furnish one of the appellees a sufficient quantity of gas to burn in three stoves and three lights, for which he was to pay a fixed price. It was to furnish another of the appellees gas for one stove and one light, for which he was to pay a fixed price. Under these facts we do not know upon what principle it can be maintained that a breach of the contract as to one of such appellees would give a joint right of action against appellant, nor can we see how a breach of the contract as to all the appellees in their individual capacity can give them a joint right of action. For these reasons the complaint, in our judgment, is wholly insufficient.

There are other questions presented by the record, but, as the judgment must be reversed because of the error in overruling the demurrer to the complaint, we need not consider them. Judgment reversed, with instruction to the court below to sustain the demurrer to the complaint, and for further proceedings not inconsistent with this opinion.