No. 99-465

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 61

299 Mont. 40

996 P. 2d 875

IN THE MATTER OF THE ADOPTION OF

JOSHUA JAMES SNYDER,

a Minor Child.

APPEAL FROM: District Court of the Tenth Judicial District,

In and for the County of Fergus,

The Honorable Wm. Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Craig R. Buehler, Attorney at Law; Lewistown, Montana

For Respondent:

Darcy M. Crum, Attorney at Law; Great Falls, Montana

Submitted on Briefs: December 22, 1999

Decided: March 9, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1.The Petitioner, Ricky Eckhardt, petitioned the District Court for the Tenth Judicial District in Fergus County to terminate the parental rights of Randy James Snyder, who is the natural father of Joshua James Snyder. Following a hearing, the District Court granted Eckhardt's petition and terminated Snyder's parental rights. Snyder appeals the termination of his parental rights. We affirm the District Court.

¶2.Although several bases for termination of Snyder's parental rights were found to exist and several issues are raised on appeal, we find the following issue dispositive:

¶3.Did the District Court err when it held that clear and convincing evidence supported the termination of Snyder's parental rights based on Snyder's convictions for sexual assault on a child and sexual intercourse without consent with a child?

## FACTUAL BACKGROUND

¶4.Randy Snyder and Wendy Eckhardt married on April 12, 1992. On February 8, 1994, Wendy gave birth to Joshua James Snyder. Randy Snyder is Joshua's natural father.

¶5.In July 1994, Snyder pled guilty to two counts of felony sexual assault on a child in violation of § 45-5-502, MCA, and felony sexual intercourse without consent with a child in violation of § 45-5-503, MCA, based on his alleged involvement with three young girls. In its sentencing order, the District Court found that Snyder was a "high risk" to reoffend because of "his need for immediate gratification and his low impulse control."

¶6.On December 13, 1994, the District Court dissolved Wendy and Snyder's marriage. The court granted Wendy sole custody of Joshua and ordered Snyder to pay $41 per month for child support. On February 12, 1996, Wendy married Ricky Eckhardt. So that he could adopt Joshua, Eckhardt petitioned the District Court to terminate the parental rights of Snyder.

¶7.On March 26, 1999, the District Court held a hearing to consider evidence in support of Eckhardt's petition to terminate Snyder's parental rights. Officer John Sanders testified that

he arrested Snyder for domestic abuse on September 11, 1993; that Wendy was pregnant when Snyder abused her; and that she had a cut on her lip and a bruise on her knee. Officer Sanders stated the following:

Q. The first contact you had with [Snyder] as a police officer- can you tell the Court when that was?

A. I believe the first one was [when] I arrested Snyder for domestic abuse. I had been called to the hospital ER and met with his wife at the time, Wendy. She had been assaulted. Snyder showed up a short time later and admitted to assaulting her, and I arrested him for domestic abuse.

Snyder was subsequently convicted of domestic abuse on September 11, 1993.

¶8. Wendy testified that after she became pregnant Snyder became more abusive; that he punched a door causing it to fall on her; that he threw her on the bed; and that he punched her in the face and the stomach, which injured her knee and caused her stomach to cramp. After Joshua was born, Wendy testified that Snyder became very abusive. She gave the following testimony:

Q. Did there come a time after Josh was born that Snyder threatened you?

A. Yes. After everything started happening with the police Randy [Snyder] became very abusive. He was constantly angry. Everything was my fault-because I wanted to know what was going on, and he was constantly lying to me about it. There would be times we would be fighting and Josh would be in bed, and the first thing he would do is run and take Josh out of the crib, and he would even hit me with Josh, holding Josh. He would sit there and hit me, and Josh would be screaming, and I would be begging him to put Josh down or let me have Josh. There was a time that I finally got Josh away from him, and I was holding Josh, and he pushed Josh, both Josh and I. Well, he pushed me, and I was holding Josh, and we fell into the dresser in Josh's room, and Josh and I both had hit our heads on the dresser . . . .

¶9. Wendy also testified that Snyder threatened to kill both her and Joshua if she left him. Wendy's sister, Connie, testified that she saw Snyder shake Wendy and try to yank Joshua away from her. Wendy's mother testified she saw evidence of abuse while Wendy was pregnant. Wendy's sister, Robin, testified as follows:

A. During the pregnancy I never saw any physical abuse. I saw bruises. Randy [Snyder] called her names constantly when she was pregnant.

Q. Tell me some of that.

A. He called her fat, worthless, lazy. He called her a bitch all the time, ugly. You name it. He probably called her it.

Snyder testified he never abused Wendy.

## STANDARD OF REVIEW

¶10. We review a district court's conclusions of law to determine whether the court interpreted the law correctly. *In re J.N. and A.N.*, 1999 MT 64, ¶ 11, 977 P.2d 317, ¶ 11, 56 St.Rep. 269, ¶ 11. We review a district court's findings of fact to determine whether the court's findings are clearly erroneous. *In re J.N.*, ¶ 11. A finding of fact is clearly erroneous if it is not supported by substantial evidence; if the district court misapprehended the effect of the evidence; or if, after reviewing the record, this Court is left with a definite and firm conviction that the district court made a mistake. *In re J.N.*, ¶ 11.

## DISCUSSION

¶11. A natural parent's right to custody of a child is a fundamental liberty interest, which must be protected by fundamentally fair procedures. *In re J.N.*, ¶ 12. Therefore, a district court must adequately address each applicable statutory requirement before terminating an individual's parental rights. *In re J.N.*, ¶ 12. The party who petitions to terminate an individual's parental rights has the burden of proving by clear and convincing evidence that the statutory criteria for termination have been met. *In re J.N.*, ¶12. We have stated:

[C]lear and convincing proof is simply a requirement that a preponderance of the evidence be definite, clear, and convincing, or that a particular issue must be clearly established by a preponderance of the evidence or by a clear preponderance of proof. This requirement does not call for unanswerable or conclusive evidence. The quality of proof, to be clear and convincing, is somewhere between the rule in ordinary civil cases and the requirement of criminal procedure-that is, it must be more than a mere preponderance but not beyond a reasonable doubt.

*In re J.L., D.L., and A.G., 277 Mont. 284, 289, 922 P.2d 459, 462 (quoting In re Interest of S.M.Q. (1990), 247 Kan. 231, 796 P.2d 543, 545). When considering the criteria for termination, courts must give primary consideration to the best interests of the child as demonstrated by the child's physical, mental, and emotional conditions and needs. Section 41-3-609(3), MCA. See also In re J.N., ¶ 13. The grounds for terminating parental rights are set forth in § 42-2-607, MCA, which provides in part:*

The court may terminate a parent's rights to a child who is the subject of an adoption proceeding based upon: . . . .

(2) a determination under 42-2-608 that the parent is unfit . . . .

Section 42-2-608, MCA, enumerates the ground for unfitness.

¶13.In this case, the District Court found Snyder unfit because he was able, yet failed to contribute to the support of Joshua for one year (*see* § 42-2-608(1)(c), MCA); because he was found guilty of sexual assault on a child (*see* § 42-2-608(1)(e)(ii), MCA) and was found guilty of sexual intercourse without consent with a child (*see* § 42-2-608(1)(e)(iii), MCA); because he was convicted of assaulting Wendy, which indicated that he is unfit to maintain a relationship of parent and child with Joshua (*see* § 42-2-608(1)(g), MCA); and because termination is in Joshua's best interest (*see* § 42-2-608(1)(h)(i), MCA) based on Snyder's treatment of Wendy, which indicated that he poses a substantial threat to Joshua's physical and psychological well-being (see § 42-2-608(1)(h)(ii)(c), MCA).

## ISSUE

¶14.Did the District Court err when it held that clear and convincing evidence supported the termination of Snyder's parental rights based on Snyder's convictions for sexual assault on a child and sexual intercourse without consent with a child?

Section 42-2-608, MCA, provides:

The Court may terminate parental rights for purposes of making a child available for adoption on the grounds of unfitness if: . . . .

(e) the parent has been found guilty by a court of competent jurisdiction of: . . . .

(ii) sexual assault on a child, as provided in 45-5-502;

(iii) sexual intercourse without consent, as provided in 45-5-503, if the victim was a child . . . .

Snyder concedes that he was convicted of sexual assault on a child and sexual intercourse without consent with a child, but contends that these convictions in themselves are insufficient to show that he "poses a risk of substantial harm to the physical or psychological well-being" of Joshua. Snyder argues that to meet the clear and convincing evidence standard, Eckhardt must show that Snyder's convictions make him unfit to maintain a parent-child relationship with Joshua. However, Snyder's argument is not supported by the plain language of the statute.

¶15.The plain language of the statute provides that the court may terminate a parent's rights and make that child available for adoption if the parent is found guilty of sexual assault on a child or sexual intercourse without consent with a child. *See* § 42-2-608(1)(e)(ii) and (iii), MCA. The role of courts in applying a statute has always been "to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. Statutory language must be construed according to its plain meaning and if the language is clear and unambiguous, no further interpretation is required. *In re A.W., D.G., and M.G., Jr.*, 1999 MT 42, ¶ 9, 975 P.2d 1250, ¶ 9, 56 St.Rep. 186, ¶ 9.

¶16.Furthermore, the preceding paragraph of § 42-2-608(1)(e), MCA, demonstrates that the legislature was capable of requiring a nexus between an enumerated offense and the adoptee where it thought a direct impact is important. Section 42-2-608(1)(e)(i), MCA, provides that when termination is based on conviction of aggravated assault, the assault must have been "on the adoptee." The fact that no similar requirement is made when the conviction is for sexual assault or sexual intercourse without consent makes it clear that the legislature intended that no similar connection be required.

¶17.Finally, even if an impact on Joshua needed to be proven, the record amply demonstrates an impact in this case. Because of his incarceration, Snyder has had no relationship and provided no support for his son for the four years prior to the hearing held in this case; and he was found to present a high risk to reoffend.

¶18.Therefore, we conclude that the District Court did not err when it held that clear and convincing evidence supported the termination of Snyder's parental rights based on Snyder's convictions for sexual assault on a child and sexual intercourse without consent

with a child. Based on that finding, it is not necessary that we separately address the other bases for the District Court's termination of Snyder's rights. The judgment of the District Court is affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.