No. 00-566

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 19

IN THE MATTER OF THE CUSTODY
AND PARENTAL RIGHTS OF C.F.,
H.F., AND J.F.,

        Youths in Need of Care.

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
Honorable Thomas C. Honzel, Judge Presiding

COUNSEL OF RECORD:

     For Appellant:

        Peter Bovingdon, Assistant Public Defender, Helena, Montana

     For Respondent:

        Honorable Joseph P. Mazurek, Attorney General; Tammy K. Plubell,
Assistant Attorney General, Helena, Montana

        Mike McGrath, County Attorney; Carolyn A. Clemens, Deputy
County Attorney, Helena, Montana

        Randi M. Hood, Chief Public Defender, Helena, Montana (For Youth)

Submitted on Briefs:  December 21, 2000

Decided:  February 15, 2001

Filed:

_____
             Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Appellant (Michael) appeals from the Findings of Fact, Conclusions of Law and Order of the First Judicial District Court terminating parental rights to his five year-old son, J.F. Michael is not the father of C.F. or H.F., the other children involved in this case. Although the District Court also terminated the parental rights of J.F.'s mother in the same proceeding, she is not a party to this appeal. We affirm the ruling of the District Court.

¶2 Michael has been in prison for a large portion of J.F.'s life. At the time of the District Court's order terminating his parental rights, he was incarcerated in the Montana State Prison, serving two consecutive five-year terms for forgery. He also has three convictions for domestic violence. One involved J.F.'s mother. The other two involved a previous relationship. Michael contends that these problems have all been related to his past alcohol abuse. He has taken steps to address this abuse and has recently expressed a desire for a relationship with his son.

¶3 The Montana Department of Health and Human Services (DPHHS) assumed protective custody of J.F. in October, 1998, following an incident in which his mother was arrested for drunken driving with J.F. and his sister in the car. Michael was incarcerated at the time, so DPHHS placed J.F. with his maternal grandmother, although both DPHHS and the grandmother noted that this was only a short term solution. J.F. was declared a "youth in need of care" by stipulation of both parents in November, 1998.

¶4 At the time he signed the stipulation, Michael was incarcerated in the Lewis and Clark County Jail awaiting sentencing on the forgery charges. He was sentenced in January 1999 to two five-year terms to be served consecutively but with all of the second term suspended. He was initially placed in the Great Falls prerelease center and was determined to be eligible for parole on May 16, 2000.

¶5 At some point, Michael expressed an interest in regaining custody of his son following his release. Therefore, in November, 1999, DPHHS prepared a treatment plan, setting out conditions Michael would have to meet to regain custody of his son. This plan required, among other things, that Michael be able to provide J.F. with a stable home, food, clothing and shelter; that Michael complete a chemical dependency evaluation and follow all recommendations; that he arrange for and participate in a program to address his domestic violence; that he arrange for and participate in contacting J.F. via the telephone and letters; that he successfully complete parenting classes; that he abstain from the use or possession of alcohol or illegal drugs and submit to random urinalysis, breathalyser, or blood testing; and that he abide by the law.

¶6 Michael demonstrated significant compliance with the terms of his treatment plan. He testified at the termination hearing that he had completed chemical dependency treatment and had achieved over a year of sobriety. He successfully completed an anger management program designed to address issues of domestic violence. The supervisor of Michael's parenting classes testified that he did so well that they explored the possibility of having him

participate as a co-facilitator in future classes. Finally, although not a condition of his treatment plan, Michael's testimony at the termination hearing expressed a sincere commitment to change his life and establish a relationship with his son.

¶7 In January, 2000, DPHHS petitioned the District Court for a permanency plan and for termination of Michael and J.F.'s mother's parental rights. This petition noted Michael's progress on his treatment plan. However, as of the date of the petition, J.F. had been in the temporary custody of DPHHS for over fourteen months, and DPHHS asserted that Michael would not be in a position to parent his child in the near future. The petition asked the court to terminate Michael's parental rights in the interests of finding a permanent home for J.F. and the other children involved. The District Court scheduled a hearing on the petition for February 29, 2000. This hearing was postponed to May 31, 2000, primarily to give J.F.'s mother an opportunity to complete her treatment plan.

¶8 On May 10, 2000, shortly before his parole eligibility date, Michael was arrested for violating the rules of the prerelease center. He pled guilty to seven infractions and was transferred to the Montana State Prison to serve the remainder of his forgery sentences. As a consequence of these violations, it was unclear when he might be eligible for parole and available to parent J.F. Michael testified that he might be eligible for parole after as few as 120 days of clear conduct. DPHHS argued, however, that Michael would likely be subject to annual parole review, with the possibility that he would serve at least another year before becoming eligible for release.

¶9     Following the scheduled hearing, the District Court concluded that Michael had failed to successfully complete his treatment plan and it was unreasonable to expect that he would be able to successfully complete it in the foreseeable future. It then entered the order terminating Michael's parental rights to J.F., which Michael now appeals.

## ISSUE

¶10    The sole issue on appeal is whether the District Court abused its discretion when it determined that Michael had not successfully completed his treatment plan and that it would not be reasonable to expect him to do so in the future. Michael argues that he substantially complied with the conditions of the plan. The State argues that substantial compliance is not the same as successful completion, that Michael will not be in a position to provide for his son anytime in the near future, and that J.F.'s best interests are served by termination and permanent placement with an adoptive family. We agree.

¶11    The decision to terminate parental rights is within the discretion of the trial court, and we review such a ruling for an abuse of discretion. In re J.M.J., 1999 MT 277, ¶ 16, 296 Mont. 510, ¶ 16, 989 P.2d 840, ¶ 16 (citing In re C.M. (1997), 281 Mont. 183, 186, 932 P.2d 1063, 1065). While the decision is discretionary, the court must make specific factual findings prior to terminating parental rights. We review such findings to determine whether they are clearly erroneous. In re C.D.S., 2000 MT 313, ¶ 5, 302 Mont. 466, ¶ 5, ____ P.3d ____, ¶ 5; In re J.H., 2000 MT 11, ¶ 20, 298 Mont. 41, ¶ 20, 994 P.2d 37, ¶ 20. A finding of fact is clearly erroneous if it is not supported by substantial evidence; if the district court

misapprehended the effect of the evidence; or if, after reviewing the record, this Court is left with a definite and firm conviction that the district court made a mistake. In re T.Z., 2000 MT 205, ¶ 10, 300 Mont. 522, ¶ 10, 6 P.3d 960, ¶ 10; In re Snyder, 2000 MT 61, ¶ 10, 299 Mont. 40, ¶ 10, 996 P.2d 875, ¶ 10 (citing In re J.N., 1999 MT 64, ¶ 11, 293 Mont. 524, ¶ 11, 977 P.2d 317, ¶ 11).

¶12 Section 41-3-609(1), MCA, sets out specific findings the court must make prior to terminating parental rights. For the purposes of this case, the District Court must have found that J.F. is a "youth in need of care," as defined by § 41-3-102(23), MCA, and that:

> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and
> (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

Section 41-3-609(1)(f), MCA. As J.F. was declared a "youth in need of care" by stipulation, the only issues are whether the District Court erroneously found that Michael did not successfully complete an appropriate treatment plan and that the conduct or condition rendering him unfit is unlikely to change within a reasonable time.

¶13 A. Did the District Court erroneously find that Michael did not successfully complete an appropriate treatment plan?

¶14 Michael does not contend that the treatment plan prepared by DPHHS and approved by the District Court was inappropriate. Rather, he argues that by successfully completing parenting and anger management class, attending chemical dependency treatment, and

staying sober, he substantially complied with the court-approved treatment plan and thus his parental rights should remain intact.

¶15 Treatment plans, developed prior to a termination hearing, are intended to provide a framework for a parent to meet the needs of the child, regain custody and preserve the parent-child relationship. This Court has previously recognized that a parent's mere compliance with a treatment plan is not enough to forestall an otherwise appropriate termination. *In re J.H.*, ¶ 23. Montana law requires not only that the parent comply with the terms of the plan, but that it be successful. Section 41-3-609(1)(f)(i), MCA.

¶16 We have previously held that a parent's continuing incarceration precluded successful completion of a treatment plan despite substantial compliance with its other conditions. *In re J.H.*, ¶ 22. In that case, several witnesses, including a probation officer, a DPHHS social worker and persons involved with the parenting program at the prison, testified that the child's mother made significant efforts to comply with the treatment plans. *In re J.H.*, ¶ 26. Nonetheless, we held that the treatment plan did not successfully achieve its objectives because the mother's continuing incarceration prevented her from being able to parent her child within a reasonable time. *In re J.H.*, ¶ 26.

¶17 In this case, the District Court found that Michael's court-approved treatment plan did not succeed in creating conditions that would allow him to provide for the welfare of his son. There is substantial evidence to support that finding because, despite complying with many of its conditions, Michael failed to achieve other important conditions of his treatment plan.

7

In particular, by virtue of his continuing incarceration in Montana State Prison, he failed to "provide for [J.F.'s] basic supportive needs such as a stable home, food, clothing and shelter." Wendy Cook, a social worker with DPHHS, testified that Michael had failed to establish and maintain a home for his son for any of the nineteen months J.F. had been in foster care and that, even if released on parole, he would be in no position to establish a home in the near future. We conclude, therefore, as we did in *In re J.H.,* that the District Court's conclusion that Michael did not successfully complete an appropriate treatment plan was not clearly erroneous.

¶18 B. Did the District Court erroneously find that the conduct or condition rendering Michael unfit is unlikely to change within a reasonable time?

¶19 When determining whether the conduct or condition of the parents is unlikely to change within a reasonable time, the court must enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders them unfit, unable, or unwilling to give the child adequate parental care. Section 41-3-609(2), MCA. In making this determination the court must consider judicially-ordered long-term confinement of the parent. Section 41-3-609(2)(d), MCA. However, the court's primary consideration must be the physical, mental and emotional needs of the child. Section 41-3-609(3), MCA.

¶20 The District Court concluded that, "[I]t is not reasonable to expect that [Michael] will be able to successfully complete his treatment plan in the foreseeable future, particularly in light of his present incarceration at Montana State Prison" and that "it is in the best interests

8

of [J.F.] that the parental rights of Michael . . . be terminated." Michael argued at the termination hearing that there was a possibility that he would be paroled within 120 days and could then resume parenting J.F. DPHHS presented evidence that it was unlikely that Michael would be paroled in the near future and that, even if he was, he would not be able to resume parenting J.F. immediately. Furthermore, DPHHS presented evidence that termination of Michael's parental rights was in J.F.'s best interests.

¶21 Margaret Corbett, a probation and parole officer for the Helena district office, testified that Michael would be eligible to apply for a prerelease program after 120 days but that the usual practice of the parole board in cases where an inmate had been transferred to the Montana State Prison following violations at a prerelease center was to set the prisoner for annual parole review. In that case, Michael would not be eligible to be considered for parole before June, 2001.

¶22 Wendy Cook testified that J.F. had already been in temporary placement for nineteen months and, even after Michael was released from prison, DPHHS would need an opportunity to determine whether Michael could remain drug and alcohol free outside the controlled setting of a prerelease center. She testified that it would then take at least six months for him to reestablish a relationship with his son. Given these considerations, Cook indicated she did not think J.F. could be reunited with his father sooner than nine to twelve months after his release. Cook also testified that J.F.'s maternal grandmother was unable to continue caring for him and that he needed a permanent home as soon as possible. She stated

that it was not in J.F.'s best interest to wait for further resolution of his parents' custody status.

¶23 We conclude, based on this testimony, that the District Court's finding that the conduct or condition rendering Michael unfit is unlikely to change within a reasonable time was based on substantial evidence and was not, therefore, clearly erroneous.

¶24 The District Court made the findings required by § 41-3-609(1), MCA. These findings were not clearly erroneous. We conclude, therefore, that the District Court did not abuse its discretion when it terminated the parental rights of Michael to his son, J.F. The ruling of the District Court is affirmed.

_W. William Leaphart_
Justice

We concur:

_Karla M. Gray_
Chief Justice

_[signatures]_
Justices