DA 09-0325

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 433

IN RE THE STEPPARENT ADOPTION OF:
B.W.Z-S.,

      A Minor Child.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eighth Judicial District, In and For the County of Cascade, Cause No. DDA-09-007 Honorable Dirk M. Sandefur, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

      Marcia Birkenbuel, Attorney at Law, Great Falls, Montana

      For Appellee:

      Burt N. Hurwitz, Church, Harris, Johnson & Williams, P.C.,
      Great Falls, Montana

Submitted on Briefs: November 12, 2009

Decided: December 22, 2009

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     This case concerns an adoption and whether the child's biological father (N.S.) should have his parental rights terminated. The child's biological mother (C.Z.P.) and her husband appeal an Order of the District Court for the Eighth Judicial District, Cascade County, denying their Petition for Stepparent Adoption and Termination of Father's Parental Rights. We affirm.

## ISSUES

¶2     We restate the issues as follows:

¶3     1. Whether the District Court properly found that N.S. did not willfully abandon his child within the meaning of § 42-2-608(1)(b), MCA.

¶4     2. Whether the District Court properly concluded that an administrative order for child support is not a "court order" within the meaning of § 42-2-608(1)(d), MCA.

## PROCEDURAL AND FACTUAL BACKGROUND

¶5     The procedural and factual backgrounds underlying this case are generally not in dispute. C.Z.P. gave birth to B.W.Z.-S. in April 2003. C.Z.P. and the child's father, N.S., who was 17 years old and a junior in high school at the time of B.W.Z.-S.'s birth, were never married. Upon the birth of his child, N.S. hoped and contemplated that he, C.Z.P. and B.W.Z.-S would live together as a family. However, his relationship with C.Z.P. faltered and ultimately ended with B.W.Z.-S. in the exclusive care of his mother. In fact, C.Z.P. moved with B.W.Z.-S. to Great Falls while N.S. was still in high school.

¶6     From 2003 until October 2005, N.S. sporadically visited B.W.Z.-S. and made minimal attempts to maintain a relationship with him. In June 2004, upon N.S.'s

2

graduation from high school, C.Z.P. obtained a child support order through the State of Montana, Department of Public Health and Human Services, Child Support Enforcement Division (CSED) which required N.S. to pay $136 per month in child support. Although he did not meet his payment obligations in full, and his motor-vehicle license was suspended for a time as a result, N.S. paid over $6,000 in child support from June 2004 up through the time C.Z.P. filed her petition. In addition to this support, C.Z.P. received over $8,000 in support from N.S.'s father, W.S.

¶7 On February 5, 2009, after several years without seeing his son, N.S. sent a cellphone text message to C.Z.P. asking for her address so that he could send her a letter. Eight days later, C.Z.P. filed the petition to terminate N.S.'s parental rights asserting that N.S. willfully abandoned B.S.Z.-S. and that N.S. was unfit because he failed to comply with the child support order.

¶8 The District Court conducted a show cause hearing on May 18, 2009, wherein C.Z.P., N.S. and W.S. testified. At the end of that hearing, the court orally pronounced its decision to deny C.Z.P.'s petition as well as its findings of fact and conclusions of law in support of that decision. The court indicated that, "under the totality of the circumstances, the father's conduct was more of character, of immature, ignorant, uncertain, and lack of diligent attention to his parenting responsibilities and rights, rather than a willful manifestation of intent to abandon the child." The District Court also concluded that C.Z.P. had not proven, to the court's satisfaction, that N.S. was in violation of a court order to support B.W.Z.-S. C.Z.P. now appeals.

¶9 Additional facts are set forth below where relevant.

## STANDARD OF REVIEW

¶10    The decision to terminate parental rights is within the discretion of the trial court, and we review such a ruling for an abuse of discretion. *In re Custody of C.F.,* 2001 MT 19, ¶ 11, 304 Mont. 134, 18 P.3d 1014. While the decision to terminate parental rights is discretionary, the district court must make findings of fact and conclusions of law that support that decision. This Court will review the district court's findings of fact to determine if they are clearly erroneous and the district court's conclusions of law to determine if they are correct. *In re C.D.S.,* 2000 MT 313, ¶ 5, 302 Mont. 466, 14 P.3d 1248.

## DISCUSSION

¶11    *Issue 1.   Whether the District Court properly found that N.S. did not willfully abandon his child within the meaning of § 42-2-608(1)(b), MCA.*

¶12    Section 42-2-608, MCA, provides, in relevant part:

> **Finding of unfitness.** (1) The court may terminate parental rights for purposes of making a child available for adoption on the grounds of unfitness if:
>
> .   .   .
>
> (b) the parent has *willfully abandoned* the child, as defined in 41-3-102, in Montana or in any other jurisdiction of the United States . . . . [Emphasis added.]

"Willfully" is defined in § 1-1-204(5), MCA, as "a purpose or willingness to commit the act or make the omission referred to. It does not require any intent to violate the law, to injure another, or to acquire any advantage." And, "abandoned" is defined in § 41-3-102(1)(a), MCA, as:

4

(i)  leaving a child under circumstances that make reasonable the belief that the parent does not intend to resume care of the child in the future;

(ii)  willfully surrendering physical custody for a period of 6 months and during that period not manifesting to the child and the person having physical custody of the child a firm intention to resume physical custody or to make permanent legal arrangements for the care of the child;

(iii)  that the parent is unknown and has been unknown for a period of 90 days and that reasonable efforts to identify and locate the parent have failed; or

(iv)  the voluntary surrender, as defined in 40-6-402, by a parent of a newborn who is no more than 30 days old to an emergency services provider, as defined in 40-6-402.

¶13  In the case *sub judice*, the parties do not dispute that, under this statutory framework, parental rights may be extinguished if the district court finds that the parent has willfully abandoned his or her child. Rather, the crux of the parties' arguments in this case hinges on whether N.S.'s actions, with respect to B.W.Z.-S., meet the definition of willful abandonment.

¶14  On appeal, C.Z.P. argues that the District Court improperly determined that N.S. did not willfully abandon B.W.Z.-S. She maintains that the District Court's totality of the circumstances analysis in which it concluded that N.S.'s conduct was not "a willful manifestation of intent to abandon the child" was in error. She contends that for purposes of § 42-2-608, MCA, "[w]illfulness . . . does not require that the act or omission be done with a particular intent . . . to relinquish parental rights." Relying on this Court's decisions in *In re the Adoption of K.P.M.*, 2009 MT 31, 349 Mont. 170, 201 P.3d 833, and *In re S.S.,* 2002 MT 270, 312 Mont. 343, 59 P.3d 393, C.Z.P. argues that N.S.'s absence of more than three years is sufficient to satisfy the willful abandonment requirements of § 42-2-608(1)(b), MCA.

5

¶15 N.S. counters that the District Court properly determined he did not willfully abandon B.W.Z.-S. within the meaning of § 42-2-608(1)(b), MCA. N.S. argues that the cases cited by C.Z.P. are inapplicable here and that, in any event, C.Z.P. has "fail[ed] to establish that the District Court's findings of fact were not supported by substantial evidence, that the District Court misapprehended the evidence or that the District Court made a mistake." As such, N.S. contends that C.Z.P. has failed to meet the burden of establishing, by clear and convincing evidence, that he willfully abandoned B.W.Z.-S. We agree.

¶16 At the outset, we note that the District Court has discretion under § 42-2-608, MCA, and *may*, if it sees fit, terminate the parental rights of a parent who has willfully abandoned his or her child. The permissive nature of this statute means that, even if a district court were to find that a parent had willfully abandoned his or her child, the termination of parental rights is not required. As such, even assuming that the District Court, in this instance, imputed a specific intent requirement into its application of § 42-2-608, MCA, it does not necessarily follow that the District Court abused its discretion. It is well established that "[b]ecause parental rights are a fundamental liberty interest, an order terminating these rights must be supported by clear and convincing evidence." *Adoption of K.P.M.*, ¶ 10. The fundamental nature of this right, coupled with the permissive language of § 42-2-608, MCA, requires that a district court deny a petition to terminate parental rights unless clear and convincing evidence requires otherwise. Therefore, unless there is clear and convincing evidence that N.S. willfully abandoned

6

B.W.Z.-S., the District Court did not commit reversible error and did not abuse its discretion by denying C.Z.P.'s petition to terminate N.S.'s parental rights.

¶17    In its decision, the District Court found that "[a]lthough the evidence is not clear about the dates and times . . . [N.S.] has at least attempted to contact the mother in some fashion or overture, either towards the child exclusively or in conjunction with the prior relationship that the father had with the mother and with the child." In addition the court explained that "[w]ith all due respect to the mother, the mother was less than enthused and welcoming . . . [a]nd certainly, did not, in any fashion, welcome those overtures by the father . . . ." The District Court further found that although N.S. had not met the full requirements of his child support obligation, he had followed employment opportunities where they were available, and made over $6,000 in support payments. Based on this evidence, the District Court held that "under the totality of the circumstances, the father's conduct was more of character, of immature, ignorant, uncertain, and lack of diligent attention to his parenting responsibilities and rights, rather than a willful manifestation of intent to abandon the child." These conclusions are not clearly erroneous and do not demonstrate by clear and convincing evidence that N.S. willfully abandoned his child.

¶18    Nevertheless, C.Z.P. argues that our holding in *Adoption of K.P.M.* requires that we reverse the District Court. She maintains that "[i]n the K.P.M. case, this Court recognized that involuntary separations from the child due to the incarceration of the parent can be considered willful abandonment under [§ 42-2-608, MCA]." Arguing by analogy, C.Z.P. contends that "[c]ertainly abandonment by a parent who is free to contact the child but makes a choice to avoid contact, must be considered as willful as

7

abandonment by an incarcerated parent." C.Z.P., however, misapprehends the basis for our holding in that case.

¶19    In *Adoption of K.P.M.*, we held that "[i]n light of the record showing that during her periods of absence, B.J.M. [K.P.M.'s mother] was struggling with an abusive relationship, was using illegal drugs, and was running with known criminals, and because B.J.M. previously failed to follow through on her commitments to care for and visit with K.P.M., it was reasonable for the District Court to find that she did not intend to resume care of K.P.M. in the future . . . ." *Adoption of K.P.M.*, ¶ 26. Thus, rather than standing for the blanket proposition that involuntary separation satisfies the willful abandonment requirement of § 42-2-608, MCA, our holding in *Adoption of K.P.M* demonstrates that a proper analysis takes into account the totality of the circumstances relevant to a given case.

¶20    In the instant case, the District Court reasonably concluded, based on the evidence before it and under a totality of the circumstances, that N.S.'s actions did not manifest a willful abandonment of his child. It is undisputed that N.S. was 17 years old and a high school junior at the time B.W.Z.-S. was born. It is also undisputed that after finishing high school, N.S. moved around considerably in an effort to find work and satisfy the requirements of his child support obligations. Furthermore, the record supports the District Court's conclusion that, while N.S. is clearly not a model of parental perfection, he did make attempts to contact C.Z.P. and B.W.Z.-S. over the course of the child's life.[1]

---

[1]    While the parties dispute that N.S. attempted to contact C.Z.P. and B.W.Z.-S., the District Court determined from the evidence presented that N.S. did attempt to contact

8

In addition, unlike the mother in *Adoption of K.P.M.* who provided very little financial support for her child, N.S. and his father, on N.S.'s behalf, made significant financial contributions to B.W.Z.-S. in the form of gifts and child support payments. In light of all of these factors, the District Court's conclusion that "under the totality of the circumstances, the father's conduct was more of character, of immature, ignorant, uncertain, and lack of diligent attention to his parenting responsibilities and rights, rather than a willful manifestation of intent to abandon the child" was not an abuse of discretion. As such, the District Court did not err in determining N.S. did not willfully abandon his child within the meaning of § 42-2-608(1)(b), MCA.

¶21 *Issue 2. Whether the District Court properly concluded that an administrative order for child support is not a "court order" within the meaning of § 42-2-608(1)(d), MCA.*

¶22 On appeal, C.Z.P. argues that the District Court erred in concluding that N.S.'s failure to fulfill his child support obligations was not a violation of a "court order" within the meaning of § 42-2-608(1)(d), MCA, which provides:

> (1) The court may terminate parental rights for purposes of making a child available for adoption on the grounds of unfitness if:
>
> . . .
>
> (d) it is proven to the satisfaction of the court that the parent is in violation of a court order to support either the child that is the subject of the adoption proceedings or other children with the same birth mother . . . .

---

C.Z.P. and that C.Z.P. largely rebuffed these overtures. This Court will "defer to the District Court's ability to judge the credibility of witnesses and to resolve any conflicts in the evidence." *Adoption of K.P.M.*, ¶ 28.

¶23 C.Z.P. maintains that "[t]he administrative proceedings provide the same provisions for notice and opportunity for hearing, and follow the same child support guidelines as utilized in District Court proceedings." Therefore, she concludes, the child support orders that N.S. failed to fully meet should be considered "court orders" within the meaning of § 42-2-608(1)(d), MCA, and that, as a result, N.S. should have been deemed unfit for purposes of terminating his parental rights. Once again we disagree.

¶24 Without deciding here whether a CSED order can properly be considered a "court order" for purposes of § 42-2-608(1)(d), MCA, a district court's determination that a parent has failed to meet the requirements of such an order does not mean that, as a matter of law, parental rights must be terminated. As noted above, the statute at issue here is permissive. If the evidence presented supports the District Court's ultimate conclusion that N.S.'s parental rights should not be terminated, the mere fact that N.S. may have violated a court order within the meaning of § 42-2-608(1)(d), MCA, does not mean his parental rights must be terminated.

¶25 While it is undisputed that N.S. failed to meet his child support obligations pursuant to the child support order, the record here clearly demonstrates that he made significant efforts to do so. Regardless of whether W.S.'s financial contributions to B.W.Z.-S. may be considered child support payments made on N.S.'s behalf, N.S. made over $6,000 in child support payments on his own. Furthermore, in the year preceding the filing of this action, N.S. made almost $2,100 in child support payments. While the fact that N.S. is more than $1,500 behind in his child support obligations is a serious matter, it does not necessitate the termination of N.S.'s parental rights.

10

¶26     As we have discussed at length, the fundamental nature of a parent's constitutional interests in their child sets a high bar for any party petitioning for the termination of parental rights. Here, when taken as a whole, the record demonstrates that, while N.S. is certainly not a model parent, C.Z.P. has not met her burden of demonstrating by clear and convincing evidence that N.S. is unfit and should therefore have his parental rights terminated.

¶27     In light of both the circumstances of this case and the constitutional implications of terminating parental rights, we conclude that the District Court appropriately applied its discretion in denying C.Z.P.'s petition to terminate N.S.'s parental rights.

¶28     Accordingly, we affirm the District Court.

/S/ JAMES C. NELSON

We concur:

/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ BRIAN MORRIS

Justice Patricia O. Cotter dissents.

¶29     I dissent from the Court's disposition of Issue One. I would reverse the District Court's conclusion that the biological father did not willfully abandon his child within the meaning of § 42-2-608(1)(b), MCA. I would not reach Issue Two.

11

¶30   "Abandon" is defined at 41-3-102(1)(a)(i), MCA, as "leaving a child under circumstances that make reasonable the belief that the parent does not intend to resume care of the child in the future." It is essentially undisputed—and the District Court found—that between October 2005 and February 2009, there was no contact between the birth father and the child. The court further found that the father had not left the child under circumstances that made it reasonable to assume that he intended to resume care of the child in the future. Yet, in contradictory fashion, the court concluded that the conduct of the father had not been "willful." The statutory definition of "willful," however, belies this conclusion.

¶31   "Willfully" is defined at § 1-1-204(5), MCA, to mean "a purpose or willingness to commit the act . . . . It does not require any intent to violate the law, to injure another, or to acquire any advantage." There can be no question that the decision to forego any contact with the child for a period in excess of three years was willful, as this is clearly a volitional act. More to the point, it matters not under the statutory definition of "willful" what the father's intent was. Nonetheless, the District Court concluded that because there was no specific manifest intent to abandon the child, the father's rights should not be terminated. In so doing, the court ignored the definition of "willful," and inserted into the statutory scheme a threshold level of intent that the statutes clearly do not require.

¶32   I agree with the stepfather: If three and one-half years without contact does not constitute abandonment as defined under law, then I can scarcely conceive of what term of years or circumstance would constitute it. Because the Petitioner more than met the statutory requirements for demonstrating abandonment, I would reverse the District

12

Court's decision and remand with instructions to grant the petition to terminate parental rights. I dissent from our failure to do so.

/S/ PATRICIA O. COTTER