FILED

11/01/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0107

DA 16-0107

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 277N

IN THE MATTER OF THE ADOPTION OF
L.J., a minor child,

TAYLOR JOHNS,

       Petitioner and Appellee,

   v.

KASSANDRA HILL,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DA-15-041B
Honorable Robert B Allison, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Scott G. Hilderman, Attorney at Law, Kalispell, Montana

      For Appellee:

          Tiffany B. Lonnevik, Lonnevik Law Firm, P.C., Kalispell, Montana

Submitted on Briefs:  September 28, 2016

Decided:  November 1, 2016

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Kassandra Hill (Kassandra) appeals the January 26, 2016 order of the Eleventh Judicial District Court, Flathead County, granting Taylor Johns's (Taylor) petition for termination of parental rights. We affirm.

¶3     L.J. is the biological child of Kassandra and McKeag Johns (McKeag), born in 2005. Kassandra and McKeag were married in 2003 and divorced in 2008. The Eleventh Judicial District Court finalized the divorce decree and approved the original parenting plan. Initially, Kassandra was the primary residential parent under the plan while McKeag spent alternating weekends plus one mid-week evening with the child. McKeag and Taylor began dating around this time.

¶4     In June 2009, Kassandra and McKeag amended the original parenting plan, increasing McKeag's parenting time to a minimum of one week per month. In December 2009, McKeag started L.J. in therapy due to concerns over his behavior. Kassandra was aware of L.J.'s counseling, but did not speak to the therapist about his treatment or progress. In February 2010, Kassandra relinquished primary residential custody of L.J. to McKeag for a consecutive six-month period, as reflected in a written agreement between

2

the parents. In March 2010, McKeag and Kassandra agreed to, and the court approved, an amended residential agreement which afforded Kassandra parenting time of one weekend per month. Kassandra married Loren Hill (Loren) the same month. In May 2010, McKeag married Taylor. One month later, L.J. began seeing psychiatric social worker Shawn Trontel to address his severe emotional problems. At the same time, McKeag moved to amend the parenting plan in order to modify child support and reflect that he was now L.J.'s primary parent.

¶5 Between February 2010 and August 2010, Kassandra exercised her parenting time five times and did not contact Ms. Trontel regarding L.J's emotional well-being. In September 2010, Kassandra attended a contested hearing on McKeag's motion to amend. Ms. Trontel also testified at the hearing and subsequently submitted letters to the court when she became concerned about L.J.'s mental status. In December 2010, the court granted McKeag's motion and placed L.J. in his primary residential care. Kassandra was afforded monthly, holiday and summer parenting time and was ordered to pay McKeag $185 per month in child support. Over the next six months, Kassandra did not exercise her monthly and holiday parenting time, and did not inquire about L.J.'s counseling.

¶6 On May 11, 2011, Ms. Trontel submitted a letter to the court, outlining L.J.'s emotional difficulties and recommending that Kassandra's visits cease until she could establish a more consistent visitation schedule. Based on these recommendations, McKeag moved for, and the District Court granted, an order restricting Kassandra's time with L.J. to Flathead County, the child's place of residence. McKeag and Kassandra negotiated a stipulated parenting plan, wherein Kassandra agreed that if she saw L.J. in

3

Montana for six consecutive months, her parenting time would extend to her state of residence (Idaho). Kassandra also agreed to call L.J. every Sunday. During her visits to Montana, Ms. Trontel encouraged Kassandra to meet with her to talk about L.J.'s treatment. Kassandra and Ms. Trontel met for the first time in June 2011. The meeting became contentious when Ms. Trontel asked Kassandra about Loren hitting L.J. on more than one occasion. After Ms. Trontel made two unsuccessful attempts to arrange additional meetings with Kassandra, the two finally met for a second and final time in September 2011.

¶7 On September 28, 2011, Ms. Trontel wrote another letter to the District Court after becoming concerned that L.J. was having a psychotic break. She recommended that L.J.'s contact with Kassandra and Loren be discontinued due to the couple's inability to understand L.J.'s needs. Kassandra objected to the letter three months later and the District Court entered an order denying her objection in January 2012. The court temporarily suspended Kassandra's parenting time until she and Loren attended monthly in-person sessions with Ms. Trontel. Kassandra and Loren failed to do so and, over the next four years, Kassandra made no effort to see, telephone, or otherwise contact her son.

¶8 In January and June 2015, McKeag and Taylor asked Kassandra to voluntarily relinquish her parental rights. After she refused the second request, Taylor filed a Petition for Termination of Parental Rights and for Stepparent Adoption on September 1, 2015, which she personally served on Kassandra. On December 21, 2015, the court held a hearing on the matter. Kassandra was represented by counsel and testified at the hearing.

¶9      On January 26, 2016, the District Court issued its findings of fact, conclusions of law, and order, granting Taylor's petition. The court found Kassandra to be unfit as a parent, based on her willful abandonment of L.J. and delinquency in child support payments. The court also took into account Ms. Trontel's opinion regarding L.J.'s progress since his mother's absence; namely, that his condition had improved with medication and the safe, structured environment provided by McKeag and Taylor. The court agreed with Ms. Trontel's assessment that resuming contact between Kassandra and L.J. would be disruptive to his progress and that terminating Kassandra's parental rights would be in L.J.'s best interest. Finally, the District Court relied on Ms. Trontel and Taylor's testimony that L.J. had told them of his wish to be adopted by Taylor.

¶10     We review a district court's decision to terminate parental rights for an abuse of discretion. *In re Adoption of B.W.Z.-S.,* 2009 MT 433, ¶ 10, 354 Mont. 116, 222 P.3d 613. A district court must make findings of fact and conclusions of law to support any decision to terminate parental rights. *Adoption of B.W.Z.-S.,* ¶ 10. We review any findings of fact made by a district court to determine whether they are clearly erroneous and we review conclusions of law made by a district court to determine if they are correct. *Adoption of B.W.Z.-S.,* ¶ 10.

¶11     Kassandra argues that the District Court abused its discretion when it deemed her unfit because the court relied upon inapplicable case law, failed to accurately apply the statutory requirements for involuntary termination of parental rights, and failed to recognize Kassandra's fundamental liberty interest in the care and custody of her child. We disagree.

¶12 "A natural parent's right to the care and custody of a child is a fundamental liberty interest." *In re R.A.J.*, 2009 MT 22, ¶ 15, 349 Mont. 100, 201 P.3d 787. As such, a party seeking termination of parental rights on the basis that a parent is unfit must prove, by clear and convincing evidence, that the statutory criteria of § 42-2-608, MCA, have been met. *See In re R.A.J.*, ¶ 15. Under § 42-2-607(2), MCA, a parent's right to a child subject to an adoption proceeding may be terminated if the court makes an unfitness determination under § 42-2-608, MCA.

¶13 For purposes of making a child available for adoption, a parent's rights may be terminated on unfitness grounds if the parent has willfully abandoned the child. Section 42-2-608(1)(b), MCA. Under § 41-3-102(1)(a), MCA, "abandoned" is defined in relevant part as:

> (i) leaving a child under circumstances that make reasonable the belief that the parent does not intend to resume care of the child in the future; [or]
> (ii) willfully surrendering physical custody for a period of 6 months and during that period not manifesting to the child and the person having physical custody of the child a firm intention to resume physical custody or to make permanent legal arrangements for the care of the child[.]

¶14 A court may also terminate parental rights in adoption proceedings if the parent has violated a court order to support the child. Section 42-2-608(1)(d), MCA. However, the permissive nature of the statute means that a court is not required to terminate parental rights on this basis alone; instead, the failure to comply with a court order should be analyzed "tak[ing] into account the totality of the circumstances relevant to a given case." *Adoption of B.W.Z.-S.*, ¶¶ 19, 24.

6

¶15 Before a termination finding is made, the respondent parent must be given proper notice and a hearing and, pursuant to the relevant statutory factors found in § 42-2-608(h), MCA, the court must find:

> (i) by a preponderance of the evidence, it is found that termination is in the best interests of the child; and
> (ii) upon clear and convincing evidence, it is found that one of the following grounds exists:

> . . .

> (B) if the child is in the legal and physical custody of the other parent and a stepparent who is the prospective adoptive parent, that the respondent is not able or willing to promptly establish and maintain contact with the child and to pay for the child's support in accordance with the respondent's financial means;
> (C) placing the child in the respondent's legal and physical custody would pose a risk of substantial harm to the physical or psychological well-being of the child because . . . the respondent's behavior . . . since the child's birth . . . indicates that the respondent is unfit to maintain a relationship of parent and child with the child; or
> (D) failure to terminate the relationship of parent and child would be detrimental to the child.

¶16 Based on the factors the court considered in this case, we cannot say that the District Court abused its discretion in terminating Kassandra's parental rights in order to allow L.J. to be adopted by his stepmother. The record demonstrates that Kassandra did not attempt to see or speak to L.J. for over four years prior to Taylor's petition for termination. Nor did she attempt or evidence an intent to resume physical custody of her son after she relinquished custody to McKeag. Because her actions meet the definition of abandonment under § 41-3-102(1)(a)(i)-(ii), MCA, the District Court did not abuse its discretion when it terminated Kassandra's parental rights on unfitness grounds. Additionally, given that Kassandra was in arrears in her child support payments at the

7

time of the termination proceedings, the court also correctly found her to be in violation of a court order and unfit on this basis.

¶17     We also conclude that the District Court did not abuse its discretion when it found that termination was in L.J.'s best interest. The record contains clear and convincing evidence to support the court's findings as it pertains to Kassandra's extended absence, lack of financial support, and the detrimental effect Kassandra's reappearance would have on L.J.'s physical and psychological well-being. In light of the circumstances of this case and considering the fundamental liberty interest at stake, we conclude that the court acted within its discretion in granting Taylor's petition to terminate Kassandra's parental rights.

¶18     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, this case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's ruling was not an abuse of discretion, its findings of fact were not clearly erroneous, and its interpretation and application of the law was correct.

¶19     Affirmed.

                                        /S/ MICHAEL E WHEAT

We Concur:

/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON