FILED

09/07/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0614

DA 20-0614

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 223N

IN RE THE ADOPTION OF:

R.D.J., a Minor Child,

JEREMY JAMES,

      Petitioner and Appellee,

  v.

WAYNE DARRELL DAILEY,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Third Judicial District,
                    In and For the County of Anaconda-Deer Lodge, Cause No. DA 20-05
                    Honorable Ray Dayton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Robyn L. Weber, Attorney at Law, Helena, Montana

      For Appellee:

            Brad L. Belke, Attorney at Law, Butte, Montana

                                  Submitted on Briefs:  August 4, 2021

                                          Decided:  September 7, 2021

Filed:

                        _____
                                Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Wayne Darrell Dailey appeals from the Third Judicial District Court's October 16, 2020 order terminating his parental rights to R.D.J. pursuant to § 42-2-607, MCA, and from that court's December 2, 2020 final decree of adoption relieving him of all parental rights over R.D.J. and establishing Jeremy James, R.D.J.'s stepfather and the appellee, as R.D.J.'s adoptive parent pursuant to § 42-5-202, MCA. We affirm.

¶3 R.D.J. was born to Mother in June 2015, while she was married to and residing with Stepfather. Mother and Father both acknowledge they engaged in an intimate relationship that resulted in Mother's pregnancy with R.D.J., and Mother informed Father of her pregnancy and his paternity. However, Stepfather is listed on R.D.J.'s birth certificate as R.D.J.'s natural father. Stepfather is known to R.D.J. as his natural father, and R.D.J. has always lived with Mother and Stepfather and the other children of Mother and Stepfather's marriage.

¶4 On July 12, 2017, Mother and Stepfather divorced. Father made no requests for legal custody of R.D.J. at that time, nor did he appear in the action to determine custody. Since their divorce in 2017, Mother and Stepfather have co-parented R.D.J. under a court-ordered parenting plan.

¶5 On October 7, 2019, over four years after R.D.J.'s birth, Father filed a Verified Petition to Establish Paternity that included a request for DNA testing of the parties and R.D.J. The DNA test report published February 5, 2020, indicated Father's probability of paternity of R.D.J. was 99.9999995%.

¶6 On February 28, 2020, Stepfather filed a petition to terminate Father's parental rights to R.D.J. and a petition for adoption of R.D.J. In June 2020, the parties attended court-ordered mediation, but the case did not resolve. Subsequently, on August 18, 2020, Father filed a petition for a final parenting plan requesting visits with R.D.J.

¶7 On September 11, 2020, the District Court held a Zoom hearing on Stepfather's petition to terminate Father's parental rights to R.D.J. At that hearing, Mother testified Father was offered the opportunity to sign R.D.J.'s birth certificate immediately following R.D.J.'s birth; Father declined.

¶8 Father testified he had no knowledge of the Putative Father Registry until three years after R.D.J.'s birth.[1] However, approximately four years before R.D.J.'s birth, Father participated in a paternity action for another child.

¶9 By Father's own testimony, he was aware of his paternity and R.D.J.'s birth. Father acknowledged he has not paid any child support over the course of R.D.J.'s life. He stated he had provided clothes, gifts, and toys and that his offers to provide child support were

---

[1] The Putative Father Registry is a procedural mechanism whereby a man who believes he is the biological father of a child may voluntarily register as the child's putative father with the Vital Statistics Bureau. Registration creates a rebuttable presumption as to the paternity of the child, § 42-2-209, MCA, and entitles a putative father to notice of any proceedings involving termination of parental rights to the child, § 42-2-203(2), MCA.

declined by Mother and Stepfather. Father did not provide medical insurance for R.D.J. Father has maintained employment over the past five years and testified he could provide medical insurance for R.D.J. through his work. He testified he was willing to obtain medical insurance for R.D.J. and to pay child support, including back support. He said he attempted to open an account with the Montana Child Support Services Division in the summer of 2020 but was denied because he lacked a court order establishing his obligation.

¶10 As to contact with R.D.J., Father admitted he has had no more than 80 hours of contact with R.D.J. over the past five years and that there have been no extended or overnight visits. Conflicting testimony provided he may have had either none or only one visit with R.D.J. during the years of 2019 and 2020. Additionally, Father admitted there were only about two visits with R.D.J. over the course of 2018. Father contended his limited contact with R.D.J. was the result of interference by Stepfather, Mother's husband of 2017–2018, and Stepfather's counsel.

¶11 On October 16, 2020, the District Court entered an order terminating Father's parental rights to R.D.J.

¶12 On December 2, 2020, the District Court held a hearing regarding Stepfather's adoption of R.D.J. and entered a final decree of adoption establishing Stepfather as R.D.J.'s adoptive parent.

¶13 Our standard of review in adoption proceedings involving parental rights terminations is as follows:

> The decision to terminate parental rights is within the discretion of the trial court, and we review such a ruling for an abuse of discretion. While the decision to terminate parental rights is discretionary, the district court must

4

make findings of fact and conclusions of law that support that decision. This Court will review the district court's findings of fact to determine if they are clearly erroneous and the district court's conclusions of law to determine if they are correct.

*In re Adoption of B.W.Z-S*, 2009 MT 433, ¶ 10, 354 Mont. 116, 222 P.3d 613 (internal citations omitted).

¶14 "A district court's findings are clearly erroneous if they are not supported by substantial evidence, if the district court misapprehended the evidence, or if we come away from our review with a definite and firm conviction that the district court made a mistake." *In re Adoption of K.P.M.*, 2009 MT 31, ¶ 10, 349 Mont. 170, 201 P.3d 833 (citing *Interstate Prod. Credit Ass'n v. DeSaye*, 250 Mont. 320, 323, 820 P.2d 1285, 1287 (1991)). "Because parental rights are a fundamental liberty interest, an order terminating these rights must be supported by clear and convincing evidence." *In re K.P.M.*, ¶ 10 (citing *In re Adoption of C.R.N.*, 1999 MT 92, ¶ 7, 294 Mont. 202, 979 P.2d 210). "Clear and convincing evidence is not a mere preponderance of evidence nor is it unanswerable or conclusive evidence or evidence beyond a reasonable doubt. Clear and convincing evidence is a preponderance of evidence that is definite, clear, and convincing." *In re K.P.M.*, ¶ 10 (citing *In re G.M.*, 2008 MT 200, ¶ 23, 344 Mont. 87, 186 P.3d 229).

¶15 Under § 42-2-607, MCA, a court may terminate a parent's rights to a child subject to adoption upon determining the parent is unfit under § 42-2-608, MCA, or upon determining the parent has irrevocably waived their parental rights by failing to timely act to protect them. Section 42-2-607(2), (5), MCA.

¶16 Section 42-2-608, MCA, provides various grounds upon which a court may terminate parental rights for unfitness, including willful abandonment as defined in § 41-3-102, MCA. Section 42-2-608(1)(b), MCA.

¶17 Circumstances constituting abandonment are statutorily defined and include the willful surrender of physical custody of a child for a period of six months without manifesting to the child and the person having physical custody during that period a firm intention to resume physical custody or make permanent legal arrangements for the care of the child. Section 41-3-102(1)(a)(ii), MCA.

¶18 In *In re R.A.J.*, this Court explicitly noted that pursuant to § 42-2-607, MCA, a court may terminate parental rights for either a failure to establish or maintain a substantial relationship under § 42-2-610, MCA, or upon a determination of unfitness under § 42-2-608, MCA. 2009 MT 22, ¶ 12, 349 Mont. 100, 201 P.3d 787. Father argues Stepfather did not assert unfitness and that there was insufficient evidence at trial to conclude Father was unfit.

¶19 Stepfather specifically raised the issue of abandonment in his petition to terminate Father's parental rights, as well as the issues of Father's failure to provide financial or medical support for R.D.J. The record contains definite, clear, and convincing evidence Father willfully surrendered physical custody of R.D.J. to Mother and Stepfather for longer than six months without manifesting a firm intention to resume physical custody or make permanent legal arrangements for R.D.J., thus meeting the statutory definition for abandonment under § 41-3-102(1)(a)(ii), MCA.

¶20   R.D.J. has lived with Mother and Stepfather for the duration of his life, and Mother and Stepfather have co-parented R.D.J. in accordance with a court-ordered parenting plan since 2017.  Father conceded he did not file with the Putative Father Registry and is not listed on R.D.J.'s birth certificate.  Father filed no actions to assert legal custody of R.D.J. until October 2019, despite awareness of divorce proceedings granting Stepfather physical and legal custody.  Father admitted he has had no more than 80 hours of contact with R.D.J. over the course of R.D.J.'s life and that in the two years preceding the adoption petition, his contact with R.D.J. was no more than a single visit.  Father has not provided medical insurance or financial support for R.D.J.

¶21   As a result of Father's failure to protect his parental rights at the time of R.D.J.'s birth or any time prior to October 2019 when R.D.J. was over four years old, Father's lack of financial support for R.D.J., and his lack of substantial relationship with R.D.J., the District Court held Father failed to demonstrate a timely commitment to the responsibilities of parenthood.  The District Court held Father had failed to assert and protect his rights to R.D.J. in a timely manner as statutorily required by § 42-1-108(2)(f), MCA.  The District Court also found Father was capable of paying child support yet failed to provide financial support for R.D.J. for more than five years.  The court held Father's rights were therefore subject to termination for nonsupport.  The District Court found Father's contacts were minimal and that no meaningful contact with R.D.J. had occurred in the 18 months immediately preceding the adoption petition's filing.  The District Court ruled Father had not established a parental relationship with R.D.J. that could be endangered by the

7

termination of Father's rights and that Father's rights were subject to termination as a result of willfully abandoning R.D.J. as defined by Montana statute.

¶22 "We defer to the District Court's ability to judge the credibility of witnesses and to resolve any conflicts in the evidence. . . . Absent a clear preponderance of the evidence against the district court's valuation, its findings of fact will not be disturbed on appeal when based on substantial though conflicting evidence." *In re K.P.M.*, ¶ 28 (internal citations omitted).

¶23 Here, Father's own testimony supports the relevant facts. As such, the District Court did not abuse its discretion in concluding Father was unfit pursuant to statutory abandonment. Sections 42-2-608(1)(b), 41-3-102(1)(a)(ii), MCA. This finding is supported by substantial evidence in the record demonstrating Father's willful surrender of custody of R.D.J. to Mother and Stepfather for longer than six months and Father's lack of manifestations of firm intent to assert physical or legal custody of R.D.J. during that time. The District Court did not misapprehend the evidence and was correct in its conclusions of law.[2]

¶24 Where a district court relies on more than one statutory basis for terminating parental rights, correct reliance upon any one basis is sufficient to support termination. *See In re Adoption of Snyder*, 2000 MT 61, ¶¶ 12, 17, 299 Mont. 40, 996 P.2d 875. *See also*

---

[2] Father additionally argues abuse of discretion and mistake by the District Court based on bias in favor of Stepfather. However, Father filed no motion for recusal, only requesting a substitute judge in his reply brief. We decline to reach the issue of bias given the substantial evidence in the record supporting the lower court's findings and that court's correct application of the law.

*In re J.W.M.*, 2015 MT 231, ¶¶ 14, 15, 17, 380 Mont. 282, 354 P.3d 626. Thus, we need not review the District Court's other findings in support of termination.

¶25 We also conclude the District Court acted within its discretion in determining adoption by Stepfather was in the best interests of R.D.J. based on Stepfather's lengthy, stable, and continuing day-to-day relationship with R.D.J. and his consistent and ongoing support for R.D.J.'s physical care, protection, growth, and psychological needs.

¶26 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's ruling was not an abuse of discretion, its findings of fact were not clearly erroneous nor suggestive of mistake, it did not misapprehend the evidence, and its interpretation and application of the law were correct.

¶27 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE