DA 07-0322

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 22

IN RE THE ADOPTION OF R.A.J., a minor child,

R.E.J. and A.J. J.,

       Petitioners and Appellants,

   v.

N.W.,

       Respondent and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                 In and For the County of Flathead, Cause No. DA 06-034(B)
                 Honorable Katherine R. Curtis, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              James M. Ramlow, Kaufman, Vidal, Hileman & Ramlow, Whitefish,
Montana

       For Appellee:

           Tiffany B. Lonnevik, Lonnevik Law Firm, Kalispell, Montana

                           Submitted on Briefs:  March 12, 2008

                                 Decided:  January 27, 2009

Filed:

_____
                       Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Appellants, R.E.J. and A.J.J. (Grandparents), are the maternal grandparents of R.A.J. They are also her guardians.  As guardians, the Grandparents petitioned the District Court of the Eleventh Judicial District, Flathead County for termination of the parental rights of both the Appellee, R.A.J.'s father, N.W., and R.A.J.'s mother whose initials are also A.J.J. (Mother).  They also petitioned to adopt R.A.J.  The District Court denied the Grandparents' petition to terminate N.W.'s and the Mother's parental rights.  As the petition to terminate parental rights was denied, R.A.J. is not free to be adopted by the Grandparents. Grandparents appeal the denial of their petition to terminate N.W.'s parental rights.

¶2     The issue before the Court is whether the District Court erred in denying the Grandparents' petition to terminate N.W.'s parental rights.

¶3     N.W. knew Medicaid was covering the expenses of the Mother's pregnancy.  He was not immediately informed of R.A.J.'s birth, but he did go to the hospital after she was born. He and the Mother spent some time together with R.A.J.  A couple weeks after R.A.J.'s birth, N.W. was deployed to Iraq upon 36 hours notice.

¶4     R.A.J. was in the care of the Grandparents and also N.W.'s parents (Paternal Grandparents) for significant periods of time while N.W. was overseas.  On one occasion, the Grandparents thought that R.A.J. was with her Mother, but she was actually in the care of the Paternal Grandparents.  The Paternal Grandparents had regular contact with R.A.J. when N.W. was overseas, and once she stayed with them during the day for three months.

2

¶5    While N.W. was in Iraq, Grandparents petitioned for and were granted guardianship of R.A.J. with the Mother's consent but without N.W.'s knowledge or consent.

¶6    Mother and N.W. exchanged emails regarding R.A.J. while he was in Iraq. N.W. allowed his parents the use of his bank account to provide for R.A.J. N.W. also provided R.A.J. with clothes and diapers while she was visiting with his parents and would buy her other things as needed. N.W. did not claim R.A.J. as a dependent on his tax returns. He thought he could not legally do so because Grandparents were her guardians.

¶7    When he returned from Iraq in May 2004, N.W. asked Grandparents to secure a paternity test to establish that he was R.A.J.'s father. They told him they would not consent until N.W. proved he would stay committed to parenting R.A.J. In spite of the Grandparents' resistance, Mother and N.W. secured a paternity test which established N.W.'s paternity. He did not immediately inform Grandparents of the results of this paternity test, but waited until after this litigation had commenced. In September 2006, N.W. disclosed the paternity test results by an affidavit filed in this action.

¶8    For a time, R.A.J. continued to have overnight visits with N.W. and the Paternal Grandparents, with the Grandparents' permission. N.W. requested permission for visits with R.A.J. at his home. Grandparents said no, giving as their reason that N.W. lived with his girlfriend and they were not married. Still, once a week, nearly every week, R.A.J. visited with N.W. at his home.

¶9    On July 17, 2006, Grandparents filed their petition to terminate N.W.'s parental rights. Mother acknowledged receipt of the petition and the summons but did not appear.

3

Her default was taken. In January 2007, N.W. filed a formal Petition in District Court for a determination that he was the father of R.A.J. An order was issued February 23, 2007, establishing N.W. as the biological father of R.A.J.

¶10 The Grandparents' petition for termination was heard on February 28, 2007. The District Court thereafter entered findings of fact and conclusions of law and a judgment denying the petition to terminate N.W.'s parental rights. Even though the mother had been defaulted, the District Court also denied the petition to terminate her parental rights. Grandparents have not appealed the judgment as it relates to R.A.J.'s mother, their daughter.

¶11 We review a District Court's decision whether to terminate parental rights for abuse of discretion. *In re A.T.*, 2003 MT 154, ¶ 9, 316 Mont. 255, 70 P.3d 1247. We review the trial court's findings of fact for whether they are clearly erroneous and its conclusions of law for whether they are correct. *In re Adoption of C.W.D.*, 2005 MT 145, ¶ 6, 327 Mont. 301, 114 P.3d 214; *In re A.T.*, ¶ 9. A district court's finding of fact is clearly erroneous if not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if, after reviewing the record, this Court is left with a definite and firm conviction that the district court made a mistake. *In re A.T.*, ¶ 9.

¶12 Considering the facts relevant to this case, the District Court had statutory authority to terminate N.W.'s parental rights to R.A.J. either: upon a determination under § 42-2-610, MCA, that as a putative father N.W. failed to establish and maintain a substantial relationship with the child; or, upon a determination under § 42-2-608, MCA, that he was unfit. Sections 42-2-607(2), (4), MCA.

4

¶13 In order to determine if the District Court correctly denied the Grandparents' petition to terminate N.W.'s parental rights under §§ 42-2-607(4), 42-2-610, MCA, it is necessary to determine whether he was a putative father as defined by law.

> "Putative father" means an individual who may be a child's birth father but who:
> (i) is not married to the child's mother on or before the date that the child is born; or
> (ii) has not established paternity of the child prior to the filing of a petition for termination of parental rights to the child for purposes of adoption.

Section 42-2-201(2)(a), MCA. Thus, as N.W. had not legally established his paternity of R.A.J. before the Grandparents filed their petition to terminate his parental rights, he was, at the time of the filing of the petition, R.A.J.'s putative father. Section 42-2-201(2)(a), MCA.

¶14 A putative father's parental rights to a child who is the subject of an adoption proceeding may be terminated if a court finds that the putative father has failed to timely establish and maintain a substantial relationship with the child. Section 42-2-610(1), MCA. The statute further provides:

> (3) In order to meet the minimal showing of having established a substantial relationship with regard to a child who is the subject of an adoption proceeding, a putative father has the burden of showing that the putative father has:
> (a) demonstrated a full commitment to the responsibilities of parenthood by providing financial support for the child in a fair and reasonable sum and in accordance with the putative father's ability and by either:
> (i) visiting the child at least monthly when physically and financially able to do so; or
> (ii) having regular contact with the child or with the person or agency having the care and custody of the child when physically and financially able to do so; and

5

(b)   manifested an ability and willingness to assume legal and physical custody of the child if the child was not in the physical custody of the other parent.

Section 42-2-610(3), MCA.

¶15    A natural parent's right to the care and custody of a child is a fundamental liberty interest.  For that reason a party seeking to terminate an individual's parental rights has the burden of proving by clear and convincing evidence that the statutory criteria for termination have been met.  *In re A.T.*, ¶ 10.  However, when a petition prays for the termination of the parental rights of a putative father, the legislature has required that he defend against the termination of his parental rights by making a minimal showing that he has established a substantial relationship with the child.  Section 42-2-610(3), MCA.  An action to establish parental rights is a civil action.  The burden of proof in a civil case is preponderance of the evidence.  Section 26-1-403, MCA.  Thus, in this case, N.W. was required to prove it was more likely than not that he had demonstrated a full commitment to the responsibilities of parenthood and manifested an ability and willingness to assume legal and physical custody of R.A.J.  Section 42-2-610(3)(a), (b), MCA.  The District Court determined he carried this burden.

¶16    The District Court found that N.W. had provided a fair and reasonable amount of support for R.A.J., considering that Grandparents had obtained guardianship of her without his knowledge and had refused to accept contributions to her support.  The District Court also found N.W. had at least monthly contact with his child except when he was unable to do so because he was in Iraq and that he had manifested an ability and willingness to assume

6

legal and physical custody of R.A.J. through his continued and frequent contact with her, his caring for her in his home to the extent allowed by her guardians, and by his pursuit of paternity testing to establish his biological relationship with her. These findings of fact are supported by testimony in the record.

¶17 The District Court also found that N.W.'s previous unwillingness to pursue legal action to terminate the guardianship and gain custody of R.A.J. was due to his young age, financial circumstances, need to reintegrate into the community, and, perhaps most importantly, threats made by the Grandparents that he would be unsuccessful if he went to Court, and that, if so, he would no longer be allowed contact with his daughter.

¶18 The District Court therefore concluded N.W. had provided financial support in a fair and reasonable fashion for R.A.J. when he was allowed to do so, had maintained regular and substantial contact with her, had a substantial parent-child relationship with her, and had demonstrated an ability and willingness to assume her legal and physical custody. Further, the District Court concluded that, if N.W.'s parental rights were terminated, Grandparents would be unlikely to allow N.W. and the Paternal Grandparents continuing contact with R.A.J. and this would be detrimental to her best interests.

¶19 An examination of the record shows that the District Court was presented with substantial credible evidence that N.W. carried his burden to show he had established a substantial relationship with regard to R.A.J. and that he had demonstrated a full commitment to the responsibilities of parenting her. The District Court did not misapprehend the effect of this evidence, and this Court is not left with the firm conviction

that a mistake has been made. The findings of fact entered by the District Court are not clearly erroneous.

¶20 As N.W. established a substantial relationship with R.A.J., the District Court was correct in concluding as a matter of law that his parental rights could not be terminated under §§ 42-2-607(4), 42-2-610, MCA.

¶21 As noted above in ¶ 12, if a father is proved unfit as provided by § 42-2-608, MCA, his parental rights may be terminated. Section 42-2-607(2), MCA. In such an instance, the petitioners must prove by clear and convincing evidence that the statutory requirements for termination have been met. *In re A.T.*, ¶ 10. However, in this case, Grandparents did not allege in the District Court that N.W. was an unfit parent under § 42-2-608, MCA, nor have they argued on appeal that he is unfit as provided therein. Thus, we need not address unfitness under § 42-2-608, MCA, or the clear and convincing standard of proof.

¶22 The judgment of the District Court denying Grandparents' petition to terminate the parental rights of N.W. to R.A.J. is affirmed.

/S/ JOHN WARNER

We Concur:

/S/ BRIAN MORRIS
/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART