FILED

February 3 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0110

DA 14-0110

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 31

PLANNED PARENTHOOD OF MONTANA
and PAUL FREDRICK HENKE, M.D., on
behalf of themselves and their patients,

      Plaintiffs and Appellees,

  v.

STATE OF MONTANA and TIM FOX,
ATTORNEY GENERAL OF MONTANA, in
his official capacity, and his agents
and successors,

      Defendants and Appellants.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV-2013-407
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Timothy C. Fox, Montana Attorney General, Mark Mattioli, Chief Deputy
Attorney General, Jon Bennion, Deputy Attorney General; Helena, Montana

      For Appellees:

            Tanis M. Holm, Crist, Krogh, Butler & Nord, LLC; Billings, Montana

            Meg Holzer, Planned Parenthood Federation of America; New York, New
York

Submitted on Briefs:   November 19, 2014
Decided:   February 3, 2015

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1　The State of Montana appeals from an order of the First Judicial District Court, Lewis and Clark County, granting summary judgment to the plaintiffs on the grounds that the rule of collateral estoppel (issue preclusion)[1] prevents the State from defending the constitutionality of two laws that require the involvement of a minor's parents before the minor may obtain an abortion.  We reverse and remand to the District Court for further proceedings.

¶2　The plaintiffs in this case filed suit in the District Court, challenging the constitutionality of two laws: (1) a 2011 law requiring parental notification before a minor may obtain an abortion, and (2) a 2013 law requiring parental consent before a minor may obtain an abortion.  The plaintiffs argue that a 1999 district court ruling which held unconstitutional a similar, 1995 law requiring parental notification before a minor may obtain an abortion now prevents litigation of the issues raised in the present case.

¶3　This appeal involves only the narrow procedural question of whether the 1999 District Court order prevents the State from defending the constitutionality of the current parental notification and parental consent laws on grounds of issue preclusion.  The rule of issue preclusion prevents the same parties from relitigating an issue already decided in another case.  For the rule to apply in this case, the issues in the current case must be identical to the issues in the 1999 case.

---

[1] To promote clarity, the trend has been to use the term "issue preclusion" in lieu of "collateral estoppel."  *See McDaniel v. State*, 2009 MT 159, ¶ 27 n.2, 350 Mont. 422, 208 P.3d 817.

¶4    The issues decided in the 1999 case were constitutional questions specific to the 1995 parental notification law that was challenged in that case. Specifically, the constitutional questions decided were: whether the 1995 law infringed upon the fundamental rights of minors; whether the State could assert a sufficiently compelling interest to justify the 1995 law's infringement on the fundamental rights of minors; and whether the 1995 law complied with the Montana Constitution's restriction against infringement upon minors' rights unless doing so enhances the protection of minors.

¶5    Although the laws that are the subject of the current challenge are similar to the 1995 law, they differ in substantive respects. Therefore, the issues to be decided in this case, while similar, are not identical to the previous case. Thus, as discussed below, issue preclusion does not apply.

## PROCEDURAL AND FACTUAL BACKGROUND

¶6    In 1995, the Montana Legislature enacted a law prohibiting physicians from providing an abortion to a minor under the age of 18 without first giving notice to the minor's parents or legal guardian. *See* Parental Notice of Abortion Act, §§ 50-20-201 to 50-20-215, MCA (1995) (repealed 2011) ("1995 Parental Notification Act"). Planned Parenthood filed suit in the First Judicial District Court, challenging the 1995 Parental Notification Act's constitutionality. The District Court ruled the law was unconstitutional. *Wicklund v. State,* 1999 Mont. Dist. LEXIS 1116 (1st Jud. Dist. Feb. 11, 1999) (ADV 97-671). The State did not appeal that ruling.

¶7    In 2011, the Legislature drafted legislative referendum LR-120, the Parental Notice of Abortion Act of 2011, to be placed on the 2012 ballot ("2011 Parental Notification Act").

3

*See* 2011 Mont. Laws 307. The referendum was passed by voters. LR-120 prohibited physicians from performing an abortion on a minor under 16 years of age without first giving notice to the minor's parents.

¶8 In 2013, the Legislature enacted the Parental Consent for Abortion Act of 2013 ("2013 Parental Consent Act"). *See* §§ 50-20-501 to 50-20-511, MCA. The 2013 Parental Consent Act requires a physician to obtain a signed consent form from a parent or guardian before performing an abortion on a minor under 18 years of age.

¶9 On May 30, 2013, the plaintiffs, Planned Parenthood and Dr. Henke, filed suit challenging the constitutionality of the 2011 Parental Notification Act and the 2013 Parental Consent Act. The plaintiffs argued that the parties and issues in the current case were the same parties litigating the same issues in the *Wicklund* case; therefore, the plaintiffs contended that the doctrine of issue preclusion bars the State from defending the constitutionality of the 2011 Parental Notification Act and the 2013 Parental Consent Act. On June 17, 2013, the State filed a motion for partial summary judgment, arguing that issue preclusion did not apply because the issue in the immediate case was different from the issue in *Wicklund*.

¶10 On January 31, 2014, the District Court issued an opinion and order granting summary judgment in the plaintiffs' favor on the grounds that issue preclusion barred the State from defending the constitutionality of the 2011 Parental Notification Act and the 2013 Parental Consent Act. The District Court concluded that the parties in the two cases were the same, the issues in the cases were identical, and the State had a full and fair opportunity to litigate these issues to a final judgment in *Wicklund*.

**STANDARD OF REVIEW**

¶11 This Court reviews a district court's rulings on motions for summary judgment de novo. *Gibbs v. Altenhofen*, 2014 MT 200, ¶ 8, 376 Mont. 61, 330 P.3d 458.

**DISCUSSION**

¶12 Issue preclusion bars a party from reopening an issue that was litigated and determined in a prior suit. *Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 15, 331 Mont. 281, 130 P.3d 1267. We apply a four-element test to determine whether relitigation of an issue is barred:

1. Was the issue decided in the prior adjudication identical to the issue raised in the action in question?

2. Was there a final judgment on the merits in the prior adjudication?

3. Was the party against whom preclusion is now asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom preclusion is now asserted afforded a full and fair opportunity to litigate the issue which may be barred?

*McDaniel v. State*, 2009 MT 159, ¶ 28, 350 Mont. 422, 208 P.3d 817 (citing *Baltrusch*, ¶ 18). All four of these elements must be satisfied in order for issue preclusion to apply. In the present case, we find that the first element has not been satisfied. Therefore, we do not address the remaining three elements.

¶13 For the first element to be met, the issues in the instant case must be identical to the issues in the prior case. The identity of issues is the most important element of issue preclusion. *Stapleton v. First Sec. Bank*, 207 Mont. 248, 258, 675 P.2d 83, 89 (1983). "Unless it clearly appears that the precise question involved in the second case was raised

5

and determined in the former, the judgment is no bar to the second action." *Phx. Mut. Life Ins. Co. v. Brainard*, 82 Mont. 39, 44, 265 P. 10, 12 (1928).

¶14 In *Wicklund*, the issues were:

[W]hether the challenged legislation [the 1995 Parental Notification Act] infringes pregnant minors' rights to privacy.

. . .

[W]hether there is a compelling state interest sufficient to justify the [1995 Parental Notification] Act's infringement on the class' fundamental right to privacy.

. . .

[W]hether the [1995 Parental Notification] Act complies with the mandates of Article II, Section 15, of the Montana Constitution, which allows the legislature to limit the fundamental rights of minors, if the exception enhances the protection of such minors.

*Wicklund*, 1999 Mont. Dist. LEXIS 1116 at 6–7, 11, 19–20.

¶15 Although the issues decided in the *Wicklund* case were specific to the 1995 Parental Notification Act, the issues in the instant case address the same constitutional questions about the two laws presently being challenged. Thus, the issues would be identical if the laws were substantively identical. The laws, however, are not substantively identical.

¶16 Comparing the 2011 Parental Notification Act to the 1995 Parental Notification Act evinces two substantive differences. First, the 1995 Act applied to minors under age 18, whereas the 2011 Act applies only to minors under age 16. *Compare* § 50-20-203(6), MCA (1995), *with* § 50-20-223(5), MCA (2011).[2] Second, although both Acts allow a minor to

---

[2] The 2013 Parental Consent Act repealed the 2011 Parental Notification Act. Therefore, the 2013 Montana Code Annotated reflects that the 2011 Parental Notification Act is repealed. Because the 2013 Parental Consent Act was temporarily enjoined from taking effect by the District Court in this case, however, the 2011 Parental Notification Act remains in effect. The 2011 Parental Notification Act is available at: http://leg.mt.gov/bills/2011/mca_toc/50_20_2.htm

6

bypass her parents' involvement by court order, the judicial bypass procedure in the 1995 Act required a minor to prove she should be exempted from the notice requirement by clear and convincing evidence. The 2011 Act is silent as to the minor's burden of proof. *Compare* § 50-20-212(4), MCA (1995), *with* § 50-20-232(4), MCA (2011). Since the 2011 Act is silent on the subject, the burden is presumably a preponderance of the evidence. *See In re R.A.J.*, 2009 MT 22, ¶ 15, 349 Mont. 100, 201 P.3d 787 ("The burden of proof in a civil case is preponderance of the evidence.") (*citing* § 26-1-403, MCA).

¶17 Turning to the 2013 Parental Consent Act, we similarly note two substantive differences between it and the 1995 Parental Notification Act. First, the 1995 Parental Notification Act required only that notice be given to the minor's parents or legal guardian, whereas the 2013 Parental Consent Act requires that the parents or legal guardian consent to the abortion. *Compare* § 50-20-203(6), MCA (1995), *with* § 50-20-504, MCA (2013). Second, in the 2013 Parental Consent Act a minor seeking a judicial bypass from the consent requirement does not have to prove her eligibility for an exemption by clear and convincing evidence as was required by the 1995 Act, making the burden in the 2013 Parental Consent Act a preponderance of the evidence. *Compare* § 50-20-212(4), MCA (1995), *with* § 50-20-509(4), MCA (2013); *see In re R.A.J.*, ¶ 15.

¶18 In holding that issue preclusion applied to the 2013 Parental Consent Act, the District Court noted that the 2013 Parental Consent Act's consent requirement is more restrictive than the 1995 Act's notice requirement which was found to be unconstitutional in *Wicklund*. While this is true, it does not weigh in favor of issue preclusion. To the contrary, the fact that the 2013 Parental Consent Act is more restrictive highlights that the two laws are not

7

identical. Whether, or to what extent, those differences make the 2013 Parental Consent Act more or less apt to pass constitutional muster as opposed to the 1995 Parental Notification Act is not the question before us. The question before us is only whether the issues in the two cases are identical.

¶19 The Dissent submits that issue preclusion bars relitigation of this issue because the issues were "put to rest in *Wicklund*." The Dissent contends that the exact issue that is present here—whether the State's asserted compelling interests justify an impingement on the constitutional rights of pregnant minors who choose to obtain an abortion—was the exact issue that was litigated in *Wicklund*. Dissent, ¶ 28. The Dissent goes on to state:

> It cannot reasonably be asserted, nor does the Court do so, that differences in age of the minor affected or provision of a burden of proof have any bearing on the constitutionality of the Acts in question, as—clearly—the constitutionality of the interests at stake do not hinge upon these minor variations.

¶20 Regarding the 2011 Parental Notification Act, we do not consider the age of the minor affected to be a "minor variation" for purposes of determining whether issue preclusion applies. The 1995 Parental Notification Act applied to all minors under the age of 18; the 2011 Parental Notification Act applies to minors under the age of 16. Both *Wicklund* and the present case implicate the constitutionality of these respective Acts within the context of Montana Constitution, Article II, Section 15, which provides:

> The rights of persons under 18 years of age shall include, but not be limited to, all the fundamental rights of this Article *unless specifically precluded by laws which enhance the protection of such persons.* (Emphasis added.)

It is axiomatic that the younger a minor is, the more protection she may require. Accordingly, a parental notification requirement may conceivably be more likely to enhance

8

the protection of a 15-year-old than it would a 17-year-old. Whether or not this, in fact, proves to be the case is a question to be addressed on its merits. That this issue should be addressed on its merits, however, is precisely why issue preclusion does not apply.

¶21   As it pertains to the 2013 Parental Consent Act, the issue in *Wicklund* was not whether the State's asserted compelling interests could ever justify *any* infringement on a minor's right to an abortion. The issue was only whether the State's asserted compelling interests could justify a law requiring minors under 18 to notify their parents before obtaining an abortion. Whether a parental consent law can pass constitutional muster when the *Wicklund* court held that a parental notification law could not is no doubt an argument that will be made to the District Court when this matter is resolved on its merits. It is, however, just that—an argument on the merits. The distinction does not serve to bar the argument entirely on grounds of issue preclusion.

¶22   We also cannot agree with the Dissent's characterization of the lower burden of proof to obtain a judicial bypass in the current Acts as compared to the 1995 Act as a "minor variation." Although the Dissent acknowledges that "in other contexts these variations could be significant," it is difficult to conceive of a context in which changing the burden of proof in a statute would not be significant. If, for example, a criminal statute is in all respects identical to a predecessor statute except it allows conviction by a preponderance of the evidence instead of beyond a reasonable doubt, this variation would certainly merit an inquiry into the constitutionality of such a statute on its own merits.

¶23   The Dissent and the District Court based their reasoning on the similarity between the old law and the new. The 2011 Parental Notification Act and the 2013 Parental Consent Act

9

are indeed similar to the 1995 Act. Issue preclusion requires more than similarity, however, it requires that the issues be identical. As the U.S. Supreme Court held, for issue preclusion to function as intended, "It must be confined to situations where the matter raised in the second suit is *identical in all respects* with that decided in the first proceeding." *Comm'r v. Sunnen*, 333 U.S. 591, 599-600, 68 S. Ct. 715, 720 (1948) (emphasis added). The material differences between the current statutes at issue and the 1995 Parental Notification Act do not meet that standard.

¶24　The Dissent next asserts that the Court is resolving this case on grounds not raised by the State in the District Court or in its opening brief, contending that the State made this "wholly new argument" in its reply brief on appeal. Dissent, ¶ 35. This assertion is incorrect. Although the State better articulated this argument in its reply brief on appeal than in its earlier briefing, it did raise this argument in its opening brief before the District Court, asserting: "The 'identical' requirement alone pretermits collateral estoppel in this case, because the laws challenged here, although similar, are obviously not the *same* law at issue in *Wicklund*." Br. in Supp. of St.'s Mot. for Partial Summ. J. at 10 (emphasis in original).

¶25　More to the point, the cases and arguments offered by the Dissent are inapposite to the current situation before us, as they apply where a wholly new issue is presented for the first time on appeal or in a reply brief. The State's reply brief, however, did not ask us to consider something we otherwise would not have considered in this appeal. The question of whether issue preclusion applies is the sole question in front of us. Issue preclusion is a legal determination we review de novo, without deference to the trial court's decision. *See Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 18, 336 Mont. 105, 152 P.3d 727 ("On

questions of law, the parties are entitled to full review by the appellate court without special deference to the views of the trial court."). Conducting full review of the legal question here requires us to determine whether all four elements of issue preclusion are met, beginning with the question of whether the issue decided in the prior case is identical to the issue raised in the current case. *See McDaniel*, ¶ 19 (first element of issue preclusion is identity of issues). Irrespective of whether the State articulated this precise argument within the broader issue preclusion context, we would nevertheless be compelled to address it because we cannot resolve the legal issue here without doing so. "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 99, 111 S. Ct. 1711, 1718 (1991).

## CONCLUSION

¶26    Because the first element of issue preclusion is not met, issue preclusion does not apply in this case. We reverse and remand for further proceedings.


/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE


Justice Patricia Cotter, dissenting.

11

¶27 I dissent on two grounds. First, the District Court correctly applied the principles of issue preclusion to conclude that the State was barred from defending the constitutionality of the Parental Notification Act and the Parental Consent Act. Second, the Court violates bedrock Montana law by deciding this case in favor of the State on grounds not raised by the State either in the District Court or in its opening brief on appeal.

¶28 I first address the correctness of the District Court's decision that issue preclusion bars relitigation of the issues put to rest in *Wicklund*. The issue before the District Court was whether the State's asserted compelling interests justify an impingement on the constitutional rights of pregnant minors who choose to obtain an abortion. This was the exact issue that was litigated in *Wicklund*, 1999 Mont. Dist. LEXIS 1116, at *11; thus, the first element of the issue preclusion test set forth in *Baltrusch*, ¶ 18, is satisfied. Likewise, the remaining three elements of the four-part test to determine whether relitigation of an issue is barred are also satisfied: there was a final judgment on the merits in the prior adjudication and no appeal was taken; the party against whom preclusion is now asserted was a party or in privity with a party to the prior adjudication; and the State was afforded a full and fair opportunity to litigate the issue now barred. *Baltrusch*, ¶ 18.

¶29 The Court concludes that the issue decided in *Wicklund* is not identical to the issue presented here, relying upon variations between the ages of the minors in the Acts, the fact that one Act sets forth the burden of proof while the other did not, and that one Act allows the appointment of a public defender for a minor seeking judicial bypass while no similar provision was contained in the 1995 Act. While in other contexts these variations could be significant, in this context they are wholly immaterial.

12

¶30 In *Wicklund*, the district court struck down a law that required minors to notify a parent before terminating a pregnancy, finding that it violated the Montana Constitution's express guarantees of privacy, equal protection, and the rights of minors. The 2011 parental notification law and the 2013 parental consent law both purport to advance four compelling state interests: "(a) protecting minors against their own immaturity"; (b) "fostering family unity and preserving the family as a viable social unit"; (c) "protecting the constitutional rights of parents to rear children who are members of their household"; and (d) "reducing teenage pregnancy and unnecessary abortion." Section 50-20-202(2), MCA (2011); § 50-20-502(2), MCA (2013). These are the exact same state interests, <u>word for word</u>, that are set forth in the 1995 Act that *Wicklund* struck down. Section 50-20-202(2), MCA (1995).

¶31 As the Court's Opinion notes, the issue here is whether the State should be prevented from defending the *constitutionality* of the current parental notification and parental consent laws. Opinion, ¶¶ 1 and 3. It cannot reasonably be asserted, nor does the Court do so, that differences in the age of the minor affected or provision of a burden of proof have any bearing on the constitutionality of the Acts in question, as—clearly—the constitutionality of the interests at stake do not hinge upon these minor variations. The Court nonetheless seizes upon these inconsequential distinctions that have nothing to do with the constitutionality of the law while altogether ignoring the verbatim identity of the State interests underlying the 1995 Act struck down in *Wicklund* and the two Acts here in question.

¶32 The Court's second transgression is that it resolves the case before us on grounds not raised by the State either in the District Court or in its opening brief on appeal. Our cases are legion for the proposition that we will not consider on appeal an issue not raised in the

13

District Court. In *Kurtzenacker v. Davis Surveying, Inc*., 2012 MT 105, ¶ 17, 365 Mont. 71, 278 P.3d 1002, we explained "We generally refuse to consider arguments raised for the first time on appeal because 'it is fundamentally unfair to fault the trial court for failing to rule on an issue it was never given the opportunity to consider.'" *See also Stevens v. Novartis Pharms. Corp*., 2010 MT 282, ¶ 78, 358 Mont. 474, 247 P.3d 244. We have also said repeatedly that we will not consider issues raised by the appellant for the first time in its reply brief. To do so would unfairly "tilt the balance in a case in favor of the party who gets the final word in presenting its arguments to this Court." *State v. Sattler*, 1998 MT 57, ¶ 47, 288 Mont. 79, 956 P.2d 54; M. R. App. P. 12(3) ("The reply brief must be confined to new matter raised in the brief of the appellee."). The Court utterly ignores these long-standing rules.

¶33 The State argued in the District Court that collateral estoppel should not be applied to it because there have been significant factual and legal developments that have occurred with respect to the issues under consideration since *Wicklund* was decided. It also argued that collateral estoppel should not be applied against the government, and that parents have a strong and legitimate interest in involving themselves in a minor's abortion decision. The State did *not* argue in the District Court that the elements of collateral estoppel or issue preclusion were not satisfied.

¶34 In its opening brief on appeal to this Court, the State made the same arguments it made in the District Court. On three occasions in its opening brief, the State framed and re-framed the issue on appeal: "The question currently before this Court is whether there have been significant legal and factual developments since *Wicklund* that support Montana's

14

argument that it has strong interests in protecting minors, protecting families, and protecting parents' rights"; "The only issue in this appeal is whether any changed circumstances since *Wicklund* would counsel revisiting whether the State has compelling interests"; and "the State is arguing that collateral estoppel should not apply in cases, like this one, involving important constitutional issues of public importance." The State made a passing and somewhat specious argument that the parties in this case are not identical to the parties in *Wicklund*, but it did not at all contend that the issues to be decided in the present litigation were different than those decided in *Wicklund*.

¶35 The suggestion that the issues presently before the Court and those decided in *Wicklund* are not identical was presented by the State for the first time in its reply brief to this Court. The State replaced counsel who wrote the opening brief with a different attorney, who presented the wholly new argument in reply that the Court now appropriates. As noted above, we have not tolerated this tactic when employed by previous appellants, and I cannot fathom why we do so here.

¶36 In sum, the Court errs in its application of the issue preclusion test and in recasting the issue on appeal for the benefit of the State. For these reasons, I dissent.

/S/ PATRICIA COTTER